315 A.2d 437.

STATE *vs.* RICHARD N. CRAPO.

FEBRUARY 26, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

730

PAOLINO, J. This case is before us on the state's bill of exceptions under G.L. 1956 (1969 Reenactment) §9-24-32[1] to a decision of a Superior Court justice granting defendant's motion to dismiss an indictment against him on the ground that the defendant's right to a speedy trial had been violated.

This appeal raises a novel question, namely, whether in the circumstances of this case, a pre-indictment delay of nearly three years was sufficient to justify dismissal of the indictment.

The transcript of the hearing on defendant's motion to dismiss discloses the following pertinent facts. On September 10, 1968, defendant was arrested by the Providence Police Department and charged with carrying a firearm without a license in violation of §11-47-8. On September 11, 1968, defendant, while represented by counsel, was arraigned in the District Court, Sixth Division and pleaded not guilty. He was then released on bail and the case was continued. The record shows that nothing further took place until defendant was secretly indicted nearly three years later.

At the time of his arrest by the Providence police, defendant was on parole from a Massachusetts prison. As a result of the Rhode Island charge, he was adjudged a violator of the Massachusetts parole and was ordered to serve the remaining two and one-half years of his original term. He began serving this term in February 1969. After serving a portion of that term he again became eligible for parole. However, he was advised by the parole board that it was not their policy to reparole anyone who was subject to an outstanding and unresolved warrant. Pursuant to the parole board's advice that he dispose of this

[1]This statute was amended by P. L. 1972, ch. 169, sec. 10, by substituting an "appeal" for a "bill of exceptions."

pending charge, defendant in February or March of 1969 wrote to the District Court requesting that he be brought to trial as quickly as possible. Getting no response, he wrote a second letter to the District Court about three weeks later and again requested that his case be brought to trial. Again he received no response.

In March or April of 1969, he wrote to his attorney requesting that his case be brought to court so that he could dispose of the matter. His attorney replied that the date of the trial was a matter over which he had no power since he did not control the court calendar.

The defendant then wrote to Lieutenant William Lawton of the Providence Police Department, who was the chief investigator of his case. He asked Lieutenant Lawton if he could bring the matter to court because he had been frustrated by other attempts. He received no reply from Lieutenant Lawton.

The defendant testified that the parole board persisted in their refusal to reparole him while the Rhode Island warrant was outstanding. In addition to the denial of parole he was also precluded from engaging in any of the rehabilitation programs sponsored by the prison, such as work release or forestry.

In the summer of 1971, defendant wrote a letter to the Attorney General of this state requesting that the pending charges against him be dismissed. As a result of this letter defendant was secretly indicted on August 31, 1971, and arraigned on September 28, 1971.[2]

At the hearing on November 29, 1971, defendant, represented by present counsel, filed a motion to dismiss the indictment on the ground that his sixth-amendment right

---

[2]The prosecuting attorney said in oral argument before us that were it not for the receipt of defendant's letter probably no indictment would have been brought before the three-year statute of limitations had expired. See G. L. 1956 (1969 Reenactment) §12-12-17.

to a speedy trial had been violated. The decision on the motion was given on December 8, 1971. The trial justice recounted the efforts made by defendant to secure a speedy disposition of his case. He also explained how the failure to dispose of the Rhode Island charges affected defendant with respect to his inability to make parole in Massachusetts or to enjoy other benefits while serving his term there. Finally he stated that during the delay one of defendant's witnesses died.

In the absence of a satisfactory explanation by the state for the delay, the trial justice held that under the circumstances in the case, he would grant defendant's motion because defendant was prejudiced by the extreme length of time between the arrest and the indictment which was not only unreasonable, but also unexplained. He noted that there was an unjustifiable delay of almost three years which resulted in the loss of a defense witness considered vital by defendant and who might be so considered. Further, in granting the motion, he pointed out that this case presented a somewhat novel case in this state, because it involved a pre-indictment delay. Notwithstanding the novelty of the situation, the trial justice believed the motion should be granted and in doing so he gave weight to the rationale of the court in *United States* v. *Colitto*, 319 F. Supp. 1077 (E.D.N.Y. 1970), a case which also involved a delay between arrest and indictment.

In urging error the state relies to a great extent on *Barker* v. *Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[3] After discussing the four factors which the Court in that case suggested should be assessed in determining whether defendant was deprived of his right to a speedy trial, that is, length of delay, reason for the delay, assertion of the right, and prejudice, the state concluded

[3]*Barker* v. *Wingo*, 407 U. S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), was decided on June 22, 1972.

that the trial justice erred in granting defendant's motion. For the reasons which follow we find no merit in the state's arguments and, therefore, affirm. We hold that *Barker* v. *Wingo, supra,* and our own case of *Tate* v. *Howard,* 110 R. I. 641, 296 A.2d 19 (1972), are controlling here and support the trial justice's decision. In addition, his decision is supported by *Moore* v. *Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), which was decided on November 5, 1973.

Before considering the specific point argued by the state, we note that during oral argument before us the prosecuting attorney stated that he was raising no issue about the fact that this case involved a pre-indictment delay. He admitted that the fact that the delay took place between the arrest and the indictment had no legal significance with respect to defendant's right to a speedy trial, because he was an "accused" within the meaning of the sixth amendment. In view of the state's position this question requires no further discussion.

## I. Length of Delay

In discussing this factor the state merely makes a comparison between the unjustifiable delay of over four years in *Barker* v. *Wingo, supra,* and the nearly three-year delay in the case at bar and concludes that since the delay here was substantially less than in *Barker* the trial justice erred in finding a violation of defendant's right to a speedy trial in this case. There is no merit to this argument. It is true that in *Barker* the Court held that a four-and-one-half-year delay in the circumstance of that case did not violate the defendant's right to a speedy trial, but the reason for so holding was the fact that the Court considered two counter-balancing factors which offset the otherwise ordinarily impermissible delay of over four years.

We considered this question only recently in *Tate* v. *Howard, supra,* where we pointed out that in the *Barker*

case the Court said that the right to a speedy trial is a relative one and that the determination of the time within which trial must be had to satisfy the guarantee is dependent upon the facts and circumstances of each case with due consideration being given to the following four factors, namely, length of delay, reason for the delay, assertion of one's sixth-amendment right, and prejudice to the accused. Thus, the passage of time, standing alone, is not enough to justify a holding that the guarantee to a speedy trial has been violated. *See* note 5 in *Tate* v. *Howard, supra*. Other factors must be considered. As the Court said in *Barker* v. *Wingo, supra* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117:

> "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."

## II, Reason for the Delay

The state presented no evidence in the Superior Court hearing to explain the delay. In its brief it readily and frankly admits that it is somewhat at a loss to account for it. The state now claims that the delay was caused by the peculiar system in Rhode Island whereby the prosecution in this case was under the control of the City Solicitor's Department of the City of Providence until such time as defendant was bound over to the grand jury. In the circumstances, the state argues, the Attorney General's Department had no knowledge of defendant's arrest and therefore was not in a position to act.

We do not question the truth of the state's statement relative to the lack of knowledge by the Attorney General's Department of the fact of defendant's arrest. However, for the purpose of determining any possible violation of defendant's sixth-amendment right to a speedy trial the city must be considered as acting as an agent of the state in carrying out a state function, and the City Solicitor's Department and that of the Attorney General must be considered as a single unit. On this record the only reasonable conclusion is that the delay experienced by this defendant was caused by the state through inadvertence on the part of the municipal prosecuting authorities and through a lack of communication between the state and municipal prosecuting departments. The defendant could not be blamed for this situation. As the Court said in the *Barker* case at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117:

> "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

The state also argues that "[i]t may be that because the defendant was incarcerated in a Massachusetts prison as a parole violator the Providence authorities felt helpless to get the defendant before the District Court in Rhode Island." It argues further that since Rhode Island is not a member of the Interstate Compact on Detainers there is no authority by which the city of Providence could have compelled defendant's presence in the District Court.

Since the state produced no evidence to explain the delay and since it in fact said that it was somewhat at a loss to explain it, we believe that its present argument is so speculative as to require no further discussion or consideration, other than to say that on this record the state does not know and therefore cannot say what was the reason for the delay.

## III. Prejudice

The state's argument on the issue of prejudice is directed solely to defendant's testimony that a witness who he had expected to call in his defense had died during the nearly three-year delay. The state attempts to show that the testimony of this witness could not possibly have helped defendant. In the circumstances of this case we need not pass on the state's argument about the deceased witness for at least two reasons.

First, the court pointed out in *Moore* v. *Arizona, supra,* that the *Barker* case expressly rejected the notion that an affirmative demonstration of a prejudice was necessary to prove a denial of the constitutional right to a speedy trial. See *Barker* v. *Wingo, supra* at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118-19, where the court said:

> "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution."

Second, the delay hurt defendant in other ways. In addition to his denial of parole, he was precluded from engag-

ing in any of the rehabilitation programs sponsored by the prison such as work release or forestry. As the Court said in *Moore* v. *Arizona, supra* at 26, 27, 94 S.Ct. at 190, 38 L.Ed.2d at 186:

> "* * * prejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings."

The Court in *Moore* also discussed the effect of pending charges on a defendant incarcerated in another state. After discussing some of the factors mentioned by Mr. Justice White in his concurring opinion in the *Barker* case, the Moore Court then said: "Some of these factors may carry quite different weight where a defendant is incarcerated after conviction in another State, but no court should overlook the possible impact pending charges might have on his prospects for parole and meaningful rehabilitation." *Moore* v. *Arizona, supra* at 26, 94 S.Ct. at 190, 38 L.Ed. 2d at 186. *See also Tate* v. *Howard, supra,* which involved a 16-month delay between the return of the indictment and commencement of trial notwithstanding repeated demands by Tate to be brought to trial. There we held that the denial of privileges usually assured an inmate serving a sentence at the Adult Correctional Institutions because of the pending of another charge constituted prejudice.

## IV. *Assertion of the Right*

In arguing this point the state notes that the final factor to be considered is what attempts defendant has made to get a speedy trial. The answer to this question is found in the many requests made by defendant for a disposition of this matter while the case was still pending in the District Court. These requests meet the criteria set forth in *Barker* v. *Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), where the Court said:

> "We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right.

This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection." *Id.* at 528-29, 92 S.Ct. at 2191, 33 L.Ed. 2d at 115-16.

How can it be said, on the basis of this record, that defendant failed to assert his right? Nor is there any merit to the state's suggestion that defendant may have waived his right to a speedy trial by his counsel's failure to file a formal motion for a speedy trial or by defendant's failure to dismiss his counsel for failure to press for a speedy trial. This claim of waiver, in the circumstances of this case, is so lacking in merit as to require no further discussion. We do point out, however, that the rule announced in *Barker* v. *Wingo, supra* at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. In view of that rule, waiver of the right to a speedy trial should

not be lightly presumed.[4] See *Barker* v. *Wingo, supra* at 525, 92 S.Ct. at 2189, 33 L.Ed.2d at 114.

For the reasons stated we hold that the trial justice was warranted in finding that the defendant's constitutional right to a speedy trial had been violated by a delay which was both unreasonable and unexplained. In the circumstances we find no error in his decision granting the defendant's motion to dismiss the indictment.

The state's exception to the decision of the trial justice granting the defendant's motion is overruled, the decision is affirmed, and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, *R. Raymond Greco*, Special Asst. Attorney General, for plaintiff.

*Toro Law Associates, Incorporated, Eugene F. Toro*, for defendant.

---

[4]*Compare Ramsdell* v. *Langlois*, 100 R. I. 468, 217 A.2d 83 (1966), where we said that the right to a speedy trial in this state, whether under the constitution or pursuant to statute, is a qualified one which is waived unless an accused asserts his right to it. But *see* note 4 in *Tate* v. *Howard*, 110 R. I. 641, 648, 296 A.2d 19, 23 (1972), where we noted that

"Although in *Ramsdell* v. *Langlois*, 100 R. I. 468, 217 A.2d 83 (1966), we reiterated the past support given by this court to the view that the right to a speedy trial is waived unless the accused makes a demand, we pointed to *People* v. *Prosser*, 309 N. Y. 353, 130 N.E.2d 891 (1955), which holds that no demand is necessary and charges the state with the burden of giving the accused a trial in due course. We emphasized that if Ramsdell had raised the validity of the demand rule, we might have changed the rule in this jurisdiction."