367 A.2d 200.

STATE *vs.* PETER E. NEWMAN.

DECEMBER 22, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. In his appeal from a robbery conviction, the defendant has sought to raise an issue of first impression. Before trial he had moved to dismiss the robbery indictment on the ground that he had been denied his constitutional and statutory right to a speedy trial. His constitutional claim is based upon the sixth amendment to the Federal Constitution and art. I, §10, of the Rhode Island Constitution. He rests his statutory claim on certain provisions of the Interstate Agreement on Detainers Act (IAD), which was enacted in 1974 and is now found in G. L. 1956 (1969 Reenactment) ch. 13 of title 13. The

novelty of the defendant's appeal is founded on his reliance on the IAD.

The pertinent facts may be briefly summarized. Newman was indicted in Superior Court, Washington County, on October 2, 1972, and charged with committing robbery. He was arraigned on March 6, 1973, and entered a not guilty plea. Released on bail on March 22, 1973, Newman fled the jurisdiction and, taking the words of Horace Greeley to heart, he headed west. He finally made his mark in California on December 18, 1973, when he was convicted of robbery in the second degree and received an indeterminate prison sentence of somewhere between 1 year to a lifetime of incarceration.

On March 29, 1974, defendant sent petitions to numerous, and appropriate, officials within the states of California and Rhode Island, demanding a speedy trial on pending Rhode Island charges against him, as well as an affidavit waiving any right to contest his extradition to Rhode Island. On June 10, 1974, California, the "sending" state, forwarded a "Certificate of Inmate Status" to Rhode Island, the "receiving" state, as required by the IAD. The defendant was subsequently transferred to Rhode Island on August 30, 1974, for trial on September 9, 1974. After a continuance of the case requested by the Public Defender and the filing of a motion to dismiss, the robbery trial finally commenced on October 16, 1974.

Article III(a) of the IAD provides that a defendant invoking its provisions must be brought to trial within 180 days after "* * * he [the prisoner] shall have caused to be delivered to the prosecuting officer and the appropriate court * * * written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint * * *." Newman contends he complied with this provision on March 29, 1974, the day on which he mailed his request to the Rhode

Island Attorney General. Citing *Pittman* v. *State,* 301 A. 2d 509 (Del. 1973), and *Townsend* v. *State,* 215 Kan. 485, 524 P.2d 758 (1974), Newman argues that the 180-day period began running on that date, and his trial on October 16 was beyond the prescribed period. Accordingly, he asserts that the trial justice should have granted his motion to dismiss the indictments, directing our attention in this regard to article V(c) of the IAD.

On the other hand, the Attorney General argues the 180-day period does not begin to run until his office receives both the prisoner's request and the "Certificate of Inmate Status" from the sending state's prison as also required by article III(a) of the IAD. In support of this position, he relies on *State* v. *Springer,* 149 Conn. 244, 178 A.2d 525 (1962). Thus, from the state's point of view, the period would not have begun to run until June 10, 1974, bringing the trial well within the prescribed period.

We would note that there is a third view, which holds that in a proper case the 180 days begins to run after the defendant notifies the officials of the prison in which he is incarcerated that he is invoking the terms of the IAD. *Beebe* v. *State,* 346 A.2d 169 (Del. 1975); *State* v. *Wood,* 241 N.W.2d 8 (Iowa 1976). The diverse approaches taken as to when the 180-day limitation period begins to run are interesting, but, as will be seen, they are totally irrelevant to this case.

Article III(a) begins by saying: "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint *on the basis of which a detainer has been lodged against the prisoner * * *"* he may make his request for a trial, and so forth. (Emphasis added.) On a careful review of the record and papers in

this case, we find that Rhode Island *never* lodged a detainer against Newman with the California authorities. Cases cited by the prosecution, the defense, and those to which we have alluded all are based upon the fact that either a detainer had been lodged by the receiving state or that the prisoner was seeking an intrastate transfer.[1]

An Iowa court recently faced with the exact situation here before us noted: "[T]he evil to be remedied by IAD was the existence of detainers lodged against a prisoner rather than the mere presence of untried, but otherwise unpursued criminal charges in a party state. It is not until the jurisdiction having the untried criminal charge lodges a *detainer based on an indictment, information or complaint* with the state of the defendant's imprisonment that the provisions of the IAD become operative." *State* v. *Wood, supra* at 12-13. We agree.

The IAD implements the right to speedy trial by minimizing interference with the prisoner's treatment and rehabilitation. The Act accomplishes this goal by requiring states to dispose of their detainers in an expeditious man-

---

[1]A detainer can be a warrant that is filed against a person already in custody for the purpose of insuring the prisoner's availability to the authority that he has lodged the detainer. ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Speedy Trial*, 43 (Approved Draft, 1968). As used in the IAD, a detainer can be some form of notice, not necessarily a warrant, which is filed with the institution in which a prisoner is serving a sentence and notifying the responsible official of the pendency of criminal charges and asking that the prisoner not be released upon the completion of his sentence but that he be held for delivery to the authorities who lodged the detainer. *Hoss v. State*, 13 Md. App. 404, 283 A.2d 629 (1971).

Forty-five states and the Federal Government have embraced the IAD. Seven states have adopted the terms of the Uniform Mandatory Disposition of Detainer Act. The IAD covers the interstate detainer, while the Uniform Act is aimed at the intrastate detainer. In their 1958 report, the Commissioners on Uniform State Laws reported that 50% of all outstanding detainers were never prosecuted. 11 *Uniform Laws Annotated* 322 (1974 ed.).

ner so that a defendant may remove the cloud on his record and participate in those programs designed to prepare him for his eventual return to society. *Commonwealth* v. *Fisher,* 451 Pa. 102, 301 A.2d 605 (1973). With no detainer outstanding, there is ostensibly nothing to inhibit California from commencing its program to rehabilitate Newman. Consequently, if Newman is to have a remedy in this facet of his appeal, it must be found in the constitutional area.

The criteria to be considered in deciding whether or not a defendant has been denied his constitutional right to a speedy trial were set out in *Barker* v. *Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This standard has been adopted and consistently followed by our court. *State* v. *Rollins,* 113 R.I. 280, 320 A.2d 103 (1974); *State* v. *Crapo,* 112 R.I. 729, 315 A.2d 437 (1974); *State* v. *King,* 112 R.I. 581, 313 A.2d 640 (1974); *Tate* v. *Howard,* 110 R.I. 641, 296 A.2d 19 (1972). The factors to be balanced are: 1) length of delay; 2) reason for delay; 3) assertion of the right; and 4) prejudice to the accused.

The length of delay and the reasons therefor go hand in hand. While there appears to be a 2-year hiatus between the robbery indictment and the subsequent trial, 18 months of the 24-month lapse are directly attributable to the fact that Newman had jumped bail and left Rhode Island. Consequently, the 6 months that he was available for trial pales in significance when one considers the delays in other cases considered by this court where the period ranged from 16 months to 2 years. There is no question that Newman called for a speedy trial. The request came from his California prison, and 6 months later, after a transcontinental trip at the taxpayers' expense, he was on trial.

We recognize that one who is incarcerated on an unrelated charge while awaiting trial may suffer prejudice as

does one free on bail. *Moore* v. *Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Strunk* v. *United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Tate* v. *Howard, supra.* However, Newman suffered no prejudice in preparing his case. Nor did he suffer prejudice from public scorn and pretrial incarceration, as he was already in custody. The only prejudice defendant *may* have suffered is a temporary delay in his rehabilitative program in California. In balancing this possibility with all the other factors considered, we find no delay in the proceedings sufficient to warrant a finding of the denial of the constitutional right to a speedy trial.

Finally, the defendant raises numerous evidentiary and procedural objections concerning the trial itself. Upon an examination of the record and cases, we find all of the defendant's objections either unsubstantiated by the transcript or totally lacking in merit.

The defendant's appeal is denied and dismissed, and the case is remitted to the Superior Court.

Motion to reargue denied.

*Julius C. Michaelson,* Attorney General, *Gregory L. Benik,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *David L. Martin, Barbara Hurst,* Asst. Public Defenders, for defendant.