STATE of South Dakota, Plaintiff
and Respondent,

v.

Roy J. BLACK FEATHER, Defendant
and Appellant.

No. 11828.

Supreme Court of South Dakota.

Argued Nov. 15, 1976.

Decided Dec. 31, 1976.

William J. Janklow, Atty. Gen., Pierre, Carl F. Haberstick, Special Asst. Atty. Gen., Parkston, for plaintiff and appellant.

Stanley E. Whiting, Winner, for defendant and appellant.

DUNN, Chief Justice.

Defendant appeals from a jury conviction in the Sixth Judicial Circuit Court of first degree manslaughter. He was charged with and tried for murder in the shooting death of his wife Winona Black Feather. The incident occurred on the night of June 16, 1972, in Martin, South Dakota. On April 15, 1975, a jury returned a verdict of guilty to the lesser charge. Defendant first asserts that the trial court erred in not dismissing the case for lack of a speedy trial or for failure to bring the case to trial during or before the second term after the one at which the information was filed. In attempting to deal with this claim, we are thwarted by a gaping hole in the record which prevents our determining the cause of delay in prosecuting the case. Rather than fall into this abyss by judicial speculation, we reverse and remand for certain evidentiary findings. The history of the case as we are able to discern it is set out below.

Following a quarrel on the day of the shooting, decedent left defendant. That evening defendant found decedent in a bar

with friends. She refused to return home with him. As she was leaving the bar, she was shot and died before reaching a hospital.

After the incident, defendant fled. His brother, Vincent Black Feather, convinced defendant to turn himself in. He did so in Rapid City on June 20, 1972. The next day he appeared before a justice of the peace and asked for a preliminary hearing. That hearing was held July 11, 1972, at which time defendant was bound over to circuit court. Bond was set at $200,000.

On September 21, 1972, defendant was arraigned in circuit court and, after a motion for dismissal upon jurisdictional grounds was denied, entered pleas of not guilty and not guilty by reason of insanity. The court ordered that defendant be taken to the State Hospital at Yankton for examination. Defendant's objection to being transported was overruled, and his motion to reduce bail was denied. The court also denied defendant's request for a trial date "because to do so would be meaningless until the mental examinations were completed and the matter of an appeal on the question of jurisdiction was determined." A report from doctors examining defendant was submitted October 31, 1972.

The record for the next year is less than clear. Apparently, sometime in December 1972, there was a discussion between the court and defendant's counsel about a possible plea to a lesser offense, and bail was reduced to $100,000. In a letter to the court dated January 6, 1973, defendant's counsel requested that a trial date be set. The attorney stated he had on three prior occasions made this request. In its response, the court denied that these requests, other than the request at the arraignment, had been made. In February 1973, defendant's counsel went to work for the Attorney General's office and was forced to withdraw from the case.

At a February 27, 1973 hearing, a new attorney appeared with defendant. Bond was reduced to $15,000. Defendant was released on bond March 3, 1973. The next matter in the record is a letter from the state's attorney to defendant's counsel dated October 30, 1973, which set a tentative trial date of January 7, 1974. Following this are several letters from the state's attorney to defendant's counsel seeking to bring the case to trial.[1] A July 2, 1974, letter to defendant from his attorney read in part:

"Mr. Long (the state's attorney) is concerned because the matter has not moved forward to trial as I have asked for delays in the hope that you would be able to raise some money so that we could prepare an adequate defense for you * * *. States Attorney Long has been very understanding in granting delays, however he has been receiving criticism because this case has not come to trial."

On October 15, 1974, the state's attorney filed an application for an order to show cause why defendant's bond should not be revoked. At the hearing on October 21, 1974, defendant's counsel withdrew. The court found defendant to be indigent and appointed counsel. Bond was continued. In January 1975, defendant's new counsel moved for a continuance to permit a psychiatric examination of defendant. The state's attorney again stated his "desire to dispose of the thing as quickly and expeditiously as possible." Defendant's counsel on February 10, 1975, moved for a three-month continuance which was denied. The trial commenced March 25, 1975, but due to a snowstorm was continued on April 15, 1975. At that time, defendant made his motions to dismiss.

■ In our constitution and by statute, South Dakota provides an accused the right to a speedy trial.[2] Our legislature has not

---

1. A letter of February 26, 1974, setting tentatively a March 26, 1974 trial date; a letter of May 15, 1974, requesting an available date in June, July, or August of 1974; and a letter of August 8, 1974, requesting a trial "before hunting season."

2. Article VI, § 7, South Dakota Constitution provides: "In all criminal prosecutions the accused shall have the right * * * to a speedy public trial * * *." SDCL 23-2-11 provides: "In a criminal action the defendant is entitled to a speedy public trial * * *."

set the number of days or months within which an accused must be brought to trial by this right.[3] This court, however, has provided a means to determine whether the right has been denied by adopting the four-factor "balancing test" of *Barker v. Wingo,* 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. *State v. Starnes,* 1972, 86 S.D. 636, 200 N.W.2d 244. The four factors to be balanced are "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* supra, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

In this case, thirty-three months elapsed between defendant's arrest and trial. He was incarcerated for eight and one-half months. Certainly this delay is long enough to serve as a "triggering mechanism" requiring inquiry into the other factors. Defendant also certainly asserted his right to a speedy trial, the third factor, by his attorney's request for a trial date.

The second factor, "the reason for the delay," is not so certain. An initial delay was required by defendant's pleas of not guilty by reason of insanity, which necessitated a psychiatric examination, and by some apparent plea bargaining which proved unsuccessful. Defendant's January 6, 1973 request for a trial date, however, was answered only by the court's statement that definite arrangements would be made shortly. The only arrangements present in this record for the next nine months show the reduction of bond and release of defendant on bond. The events beginning October 30, 1973, evidence an unfulfilled desire by the state to bring the case to trial. The letter from defendant's counsel to defendant, as well as other materials in the record, reveals the reason for the state's frustration—a desire by the attorney for money for his fee and for pretrial investigation of the case. The question facing us is whether the delays requested by defendant's counsel mentioned in the letter were

initiated immediately upon the attorney's representation in the case or subsequently. The state's October 30, 1974 application seeking revocation of defendant's bond also questions defendant's willingness to "cooperate and assist his counsel * * * in the preparation of his defense" for a period of eighteen months.

The fourth factor, "prejudice to the defendant," is as elusive a concept as the speedy trial right in general. Defendant does not claim that his defense was impaired by the delay. In *Barker* this was recognized as the most serious interest in determining prejudice. Here no witnesses were unavailable, and the transcript reveals memories were not unduly weakened by the passage of time. Another interest recognized in *Barker* was the possibility of prejudice to an accused's speedy trial right from anxiety and concern about his prosecution. The suspicions and hostility of the community and the restraint of an accused's liberty, even though out on bond, are interests cognizable by this court. Particularly where a defendant requests to be brought to trial, the state has a burden to do so promptly.

Defendant also claims that the case should be dismissed for failure to bring the case to trial during or before the second term after the one at which the information was filed.[4] The terms of court for Bennett county were in March and September. Uncertain here is the date the information was filed. No date appears on the information. It was signed by the state's attorney July 31, 1972. Defendant contends that we must assume it was filed on that date. The state maintains that we must determine the date of filing by its position in the chronological court file. Because it is found following the February 27, 1973 order reducing bond, the state concludes it must have been filed after that document was filed on March 13, 1973. However, in the record there is some

---

**3.** Cf. 18 U.S.C., § 3161.

**4.** SDCL 23–34–2 provides: "If a criminal action, unless postponed upon defendant's appli-

cation, is not brought to trial during or before the second term after the one at which the indictment or information is filed, the court must order the prosecution dismissed."

evidence that the information was filed at the time of arraignment. In that proceeding the following is found:

> "THE COURT: Here is the original Information and here is the Defendant's written Motion and
>
> MR. LOOBY: I will return them to the vaults of Bennett County."

Based upon this record, and absent any other evidence, we conclude the information was filed September 21, 1972. The second subsequent term was the September term of 1973. The statute was not violated based upon our finding that defendant had requested a postponement of the January 1974 trial date.

■ Defendant's second contention is that the trial court erred in denying a directed verdict for him because the state failed to rebut the presumption of insanity raised by defendant. Three persons testified as to defendant's sanity. The state's witness, Dr. Behan, testified (through a deposition) that based on the conditions at the time of his interview in October 1972, defendant was competent and capable of assisting his attorney in his defense. He also testified that his opinion as to defendant's ability to distinguish right from wrong at the time of the alleged offense would have to be qualified because he would not know the defendant's circumstances at the time (such as drinking or using drugs).

■ Defendant presented two witnesses testifying as to his sanity. His brother Vincent, a layman, testified that at the time of the alleged offense defendant was not acting normally, had memory problems, and did not seem to understand Vincent when he spoke to him. He further stated: "I think he was insane at the time." However, defendant's other witness, Dr. Egan, a psychiatrist who interviewed defendant in March 1975, testified that he believed defendant was legally sane at the time of the alleged offense. In considering denial of a motion for directed verdict, this court "considers all the evidence in determining whether denial of the motion was reversible error." *State v. Olson,* 1968, 83 S.D. 493, 496, 161 N.W.2d 858, 859–60; *State v. Satter,* 1976, S.D., 242 N.W.2d 149; *State v. Zemina,* 1973, 87 S.D. 291, 206 N.W.2d 819. Particularly considering the testimony of defendant's witness, we conclude it was not error to deny him a directed verdict.

■ Defendant finally contends that the court erred in failing to give his requested instruction 3 which stated the possible consequences of the jury finding him not guilty by reason of insanity. The requested instruction read as follows:

> "If a defendant is found not guilty by reason of insanity it does not necessarily mean that the defendant will go free on society. If such a verdict is returned, the Court may, if it deems the defendant's discharge dangerous to the public peace or safety, order the defendant committed to the State Hospital for the Insane."

Defendant maintains that this instruction merely repeats the terms available to the court under SDCL 23–45–21, and that although it is not error to refuse to instruct as to a possible penalty for an offense, here the jury would not be apprised of a punishment. The argument that this kind of instruction should be carved as an exception to the rule that a jury should not be informed of the effect of its decisions upon the rights of the parties has been presented to other courts. *Nelson v. State,* 1967, 35 Wis.2d 797, 151 N.W.2d 694; *State v. Shoffner,* 1966, 31 Wis.2d 412, 143 N.W.2d 458; *Bean v. State,* 1965, 81 Nev. 25, 398 P.2d 251. Even though commitment in those states was mandatory upon return of a verdict of not guilty by reason of insanity, the courts held it not prejudicial error to refuse to give the instruction.[5] In South Dakota, commitment is not mandatory; the court must find the defendant " 'dangerous to the public peace and safety if left at large.' " *State ex rel. Allen v. Radack,* 1976, S.D., 246 N.W.2d 661, 662, quoting *State ex rel. Barnes v. Behan,* 1963, 80 S.D. 370, 124 N.W.2d 179. We hold it is not prejudicial error to fail to instruct on what

---

**5.** In *Shoffner* the court so held, although it stated that it preferred the instruction be given.

is only a possible effect of the jury's verdict.

 We reverse and remand to the circuit court to conduct an evidentiary hearing as to the cause or causes for the delay of the trial of this case from October 31, 1972 to October 1973. It should have been tried within a reasonable time following defendant's requests. The trial court is to keep in mind that the burden is on the state to bring the case on for trial, particularly where, as here, defendant made a request to set a trial date. Therefore, the burden of proof at the evidentiary hearing will be upon the state to show that the responsibility for the delays in this case was with the defendant and not the state. *United States v. Perry,* 1973, D.C.D.C., 353 F.Supp. 1235; *United States v. West,* 1974, 164 U.S.App. D.C. 184, 504 F.2d 253; *State v. Alvarez,* 1972, 189 Neb. 281, 202 N.W.2d 604; *State v. Albertsen,* 1975, Iowa, 228 N.W.2d 94. If the defendant was responsible for the delay, the conviction will be affirmed. If he was not, the conviction will be reversed and the case dismissed as a denial of the right to a speedy trial. *Strunk v. United States,* 1973, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56. The decision of the trial court will, of course, be reviewable by this court upon appeal by the nonprevailing party. *State v. Albertsen,* supra.

WINANS and ZASTROW, JJ., concur.

WOLLMAN and COLER, JJ., concur in part and dissent in part.

WOLLMAN, Justice (concurring in part, dissenting in part).

Although it is a fact that defendant's original attorney made a request in January of 1973 that the case be set for trial, it is also a fact that because of the trial judge's schedule the earliest date available for trial would have been in late February of 1973. Defendant obtained new counsel on February 27, 1973. To say that there may have been an unreasonable delay in setting the case for trial during the period from January of 1973 to October of 1973, one must assume that defendant and his new counsel

were prepared for and desirous of trial during that time, an assumption that the record belies. I find nothing in the record to indicate that defendant's new counsel made any request whatsoever that the case be set for trial. Indeed, the record is clear that counsel repeatedly requested continuances and that it was only through the persistent efforts of the state's attorney that the case was finally brought to trial.

I concur in the majority opinion insofar as it disposes of the other issues raised by the appeal.

I would affirm the judgment.

I am authorized to state that Justice COLER joins in this concurrence in part and dissent in part.