**STATE of South · Dakota, Plaintiff and Respondent,**

v.

**Roy J. BLACK FEATHER, Defendant and Appellant.**

**No. 12280.**

Supreme Court of South Dakota.

Argued Feb. 17, 1978.

Decided June 8, 1978.

Carl F. Haberstick, Sp. Asst. Atty. Gen., Parkston, for plaintiff and respondent.

Stanley E. Whiting of Day & Grossenburg, Winner, for defendant and appellant.

DUNN, Chief Justice.

On December 31, 1976, this court filed its opinion in *State v. Black Feather,* 1976, S.D., 249 N.W.2d 261. One of the issues raised by the defendant was his denial of the constitutional right to a speedy trial. He was arrested on June 20, 1972, in connection with the death of his wife, but he was not tried until April 15, 1975. This court, in trying to deal with the speedy trial issue, was confronted with a "gaping hole in the record which prevents our determining the cause of delay in prosecuting the case." 249 N.W.2d at 262. In an effort to fill that void, the case was reversed and remanded for the Circuit Court, Sixth Judi-

cial Circuit, to conduct an evidentiary hearing as to the cause or causes for the delay of the trial for the period from October 31, 1972 to October of 1973. The circuit court decided that, in spite of the fact the defendant personally wanted an early trial date, he was, through his retained defense counsel, responsible for the delay of the trial and therefore his conviction should stand. We reverse that decision.

In a two-day hearing, the circuit court heard evidence from Robert Looby and Lawrence Long, the two state's attorneys involved, William Janklow and John Simpson, the two defense attorneys involved, and the defendant. The circuit court found that the defendant was not released from the Human Services Center until November 9, 1972, at which time his original defense attorney Mr. Janklow began serious preparation of the defense. On January 6, 1973, a written request for a trial date was made, and a trial date was set for May 21, 1973. The court further found that Mr. Janklow became aware in late February or early March of 1973, that he would be going to work for the attorney general's office in Pierre. Sometime between February and April of 1973, Mr. Simpson was brought in by Mr. Janklow to handle the defense, and in May, Mr. Simpson asked for a delay of trial to give him time to prepare his defense, which was granted. The remainder of the time between April and October of 1973, was spent in efforts by Mr. Simpson to get some money from the defendant for preparation of an insanity defense and as his fee for defending Mr. Black Feather.* The circuit court's final conclusion was that "[n]either the State nor the defense counsel moved the Court for trial during that period because of mutual agreement between them," and, as a result, the defendant, through his counsel, was responsible for the delay. The court did find as a matter of fact, however, that the defendant had personally requested his counsel to secure an early trial date.

The facts given above were those relied upon by the circuit court. Our reading of the record, however, indicates several other items that are relevant to a determination of this issue. At approximately the same time Mr. Janklow left his private practice, Mr. Looby, the state's attorney, moved from Martin, South Dakota, to Pierre and, although retaining the position of state's attorney for several months thereafter, he in effect turned the state's attorney's office over to a deputy state's attorney, Lawrence Long, who was a recent law school graduate who had never tried a case. Mr. Long conceded that he would have been unprepared to handle a murder trial such as this one had the trial been held as scheduled on May 21, 1973. The record also contains a letter from Mr. Janklow to the defendant dated April 19, 1973, informing him of the May 21 trial date and that the case is "almost all put together" and "we will be prepared to go on that date." Mr. Janklow went on in that letter to state that John Simpson would "assist" him. As of April 19, 1973, therefore, Mr. Janklow had not formally withdrawn and was ready to go to trial. On March 23, 1973, however, he had accepted an offer from the attorney general's office to begin work on April 23, 1973, so he knew that he would not be at trial with the defendant when he wrote the April 19th letter. The next communication with the defendant in the record is dated July 6, 1973, when Mr. Simpson wrote to him informing him that he (Simpson) would be taking over the defense and that a continuance had been requested and granted. Mr. Simpson wanted to discuss the matter of money for a fee and for preparation of the defense, and it was this matter that was the source of the problem through the time that Mr. Simpson withdrew and court-appointed counsel took over the defense. Mr. Janklow had apparently spent a great deal of his own money in preparing the defense, and Mr. Simpson did not want to be placed in a similar position. Both attorneys believed that the defendant's parents intend-

---

* We note that the defendant ultimately went to trial with court-appointed counsel and had an expert testify on the issue of insanity.

ed to sell some land to obtain the necessary money, but this sale never occurred.

The facts ascertained by the circuit court and those culled from a reading of the record support the circuit court's conclusion that the reason for the delay was an agreement by state and defense counsel not to push the matter. The circuit court, however, did not consider the question of whether Roy Black Feather waived his constitutional right to a speedy trial by the conduct of his counsel. We conclude that he did not do so and that this case should be dismissed for that reason.

In analyzing this question, we must keep in mind the rule that a court should " 'indulge every reasonable presumption against waiver' of fundamental constitutional rights * * *." *Johnson v. Zerbst*, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466; *Pitts v. State of North Carolina*, 1968, 4 Cir., 395 F.2d 182, 188. The right to a speedy trial is "as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina*, 1967, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 8. The United States Court of Appeals for the Eighth Circuit has stated that waiver of one's speedy trial right is not readily to be assumed. *Hodges v. United States*, 1969, 408 F.2d 543; see also, *Budd v. Erickson*, 1973, D.C.S.D., 354 F.Supp. 865.

The record reveals no written orders from the circuit court which was to try this defendant, and it contains no evidence of a knowing waiver by the defendant of his right to a speedy trial. Mr. Janklow and Mr. Simpson both agree that the defendant told them that he wanted to get the trial over with, and the lower court made a finding of fact to that effect. The defendant asserted his right by a written demand for a speedy trial on January 6, 1973, and the reason for the cancellation of the May 21, 1973 trial date was the fact that the attorneys involved on both sides found new jobs and turned the matter over to new attorneys. As indicated before, Mr. Black Feather believed he was going to get his trial and his defense was "ready to go" on April 19, 1973, and then was apparently left in limbo until July 6, 1973, when Mr. Simpson wrote to say he was taking over the defense and needed time and money to prepare the defense.

EC 2–32 of the Code of Professional Responsibility states in part:

"A decision by a lawyer to withdraw should be made only on the basis of compelling circumstances, and in a matter pending before a tribunal he must comply with the rules of the tribunal regarding withdrawal. A lawyer should not withdraw without considering carefully and endeavoring to minimize the possible adverse effect on the rights of his client and the possibility of prejudice to his client as a result of his withdrawal. Even when he justifiably withdraws, a lawyer should protect the welfare of his client by giving due notice of his withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which the client is entitled, cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm. * * *"

Mr. Janklow admitted that he was hired by the attorney general's office on March 23, 1973, with employment to begin on April 23rd. Mr. Simpson had appeared at a bail reduction hearing for the defendant in February of 1973, at Mr. Janklow's request. Mr. Janklow, therefore, had over a month to prepare Mr. Simpson to handle the defense at the May 21 trial, yet on April 19th he wrote the defendant and did not even mention that he would not be able to handle the trial for him.

▮ Further, this case passed over several terms of court after the information had been filed and thus was on the criminal calendar. The trial court had a duty to bring this criminal case up for trial or at least conduct a hearing where the defendant could either demand or waive a speedy trial on the record. SDCL 23–34–2. There is no indication in the record that this was ever done.

▮ Under these circumstances we cannot say that Mr. Black Feather made an intelligent waiver of his right to a speedy

trial. The California Supreme Court has recently stated that, although the general rule is that the power to control judicial proceedings is vested exclusively in counsel, there are certain fundamental protections guaranteed an accused, speedy trial being one, which counsel may not waive without his client's concurrence. *Townsend v. Superior Court of Los Angeles County*, 1975, 15 Cal.3d 774, 126 Cal.Rptr. 251, 543 P.2d 619; see also, *Commonwealth v. Williams*, 1974, 457 Pa. 502, 327 A.2d 15, and *State v. Crapo*, 1974, 112 R.I. 729, 315 A.2d 437. During the time that Mr. Janklow represented him, Mr. Black Feather believed the trial was going to take place. His contact with Mr. Simpson amounted to two one-half hour conferences, and he indicated a desire to be tried quickly to Mr. Simpson at those meetings.

In the first Black Feather decision, supra, this court concluded that the length of delay, the fact that the defendant asserted his right to a speedy trial, and the prejudice arising from the delay were all factors weighing in favor of dismissal of the case, applying the test set out in *Barker v. Wingo*, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. We concluded that, if the defendant was not responsible for the delay, his conviction should be reversed and dismissed. In view of our conclusion that the delay was caused by actions of counsel taken without the concurrence of the defendant, we reverse and order the conviction of the defendant dismissed for violation of his constitutional right to a speedy public trial.

ZASTROW, J., concurs.

PORTER, J., concurs specially.

WOLLMAN and MORGAN, JJ., dissent.

PORTER, Justice (concurring specially).

I concur in the opinion of Chief Justice Dunn and add the following:

The general public has a vital interest in seeing that persons charged with crime are promptly brought to trial. Speedy trial of those charged leads to prompt imposition of sentence upon those convicted. This brings a greater respect for law by the public generally, and heightens the deterrent effect of laws prohibiting criminal conduct.

Correspondingly, each person charged with crime is, under our system, presumed innocent until proven guilty beyond a reasonable doubt, and a speedy trial affords one wrongly charged the prompt vindication which should follow if the charge made is unproven.

As Justice Winans wrote in *State v. Starnes*, 86 S.D. 636, 200 N.W.2d 244 (1972), quoting from the decision of the United States Supreme Court in *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1:

"The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution." *Id.*, 386 U.S. at 226, 87 S.Ct. at 995, 18 L.Ed.2d at 9.

Justice Winans in *Starnes* refers also to Article VI, § 7 of the South Dakota Constitution which likewise guarantees the right ". . . to a speedy public trial by an impartial jury . . ." and to the fact that the South Dakota Legislature recognized speedy trial as one of the basic rights of a defendant, in adopting SDCL 23–2–11. Only if we enforce that right with unmistakable firmness will our state criminal justice system respond statewide, by affording, in future criminal cases, the speedy trial which is in the public interest of seeing the prompt conviction and punishment of those who violate the criminal law and in the individual interest of each person against whom a criminal charge is made.

Significantly, the majority opinion of the court in this case, authored by the Chief Justice, makes clear that a positive duty rests upon the trial judge to act affirmatively to implement the speedy trial requirement. Once the information is filed in circuit court or the pending criminal action is otherwise brought into circuit court, the court from that time on may properly upon its own motion take such steps in open court as are required to insure compliance with the constitutional right of speedy trial.

WOLLMAN, Justice (dissenting).

Although I concur fully in Justice Morgan's dissenting opinion, because I believe it is a grave error to reverse this conviction I add a few comments of my own.

When the delay in this case, and we must remember that we are talking about the period from January of 1973 to October of 1973, is measured against the standards set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, it seems abundantly clear that the trial court's decision must be affirmed.

First, the length of the delay was not so inordinate as to give rise to a presumption of prejudice. Defendant was charged with murder. Notwithstanding this fact, he was released on bail following a bond reduction hearing held in February of 1973. Granted that defendant was no doubt subject to the anxieties and apprehensions one who is under a charge of murder might normally be expected to experience, nevertheless he was not incarcerated during the time in question.

Second, the circumstances giving rise to the delay certainly justify the delay. The record reveals that there was plea bargaining between the state's attorney and Mr. Janklow during the early part of 1973; indeed, that is the reason why the state's attorney took the rather unusual step of himself moving that defendant's bond be reduced. By the time the plea bargaining negotiations apparently came for naught, Mr. Janklow was in the process of winding up his practice and preparing to take a new position as a prosecutor for the Attorney General's office. Mr. Simpson did not become actively involved in the representation of defendant until sometime in April of 1973. If there is one thing that is clear from the record it is the fact that Mr. Simpson was not prepared to go to trial on May 21, 1973. There is adequate support in the record for the trial court's finding that Mr. Simpson asked for a delay of trial early in May of 1973 to give him time to prepare his defense. Likewise, it is clear that Mr. Simpson first notified defendant in early July of 1973 that he had received Mr. Jank-

low's file in the case and that July 16, 1973, was the first meeting between Mr. Simpson and defendant with respect to preparation for trial. Moreover, the only inference that can be fairly drawn from the record is that Mr. Simpson at no time desired to go to trial between the time he was engaged to represent defendant and October 31, 1973. Finally, I find nothing in the record that would in any way support an inference that the state was responsible for the delay in question.

Third, I find nothing in the record to support a finding that defendant's professed desire for an early trial date was ever communicated to the state following the postponement of the May 1973 trial date. As the Court stated in *Barker v. Wingo*, supra,

"The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

As I read the record, the state's attorney was completely justified in relying upon the implicit assumption that Mr. Simpson had obtained the consent of his client in asking for successive delays in setting a trial date. To be sure, it would have been a much better procedure for the request for continuances to be put on record before the trial court, with an adequate record being made of defendant's acquiescence in his counsel's request for additional time to prepare for trial. We need not reverse defendant's conviction to make this point, however, for even the most casual of prosecutors should recognize the teachings of recent decisions to the effect that the duty rests upon the state to bring matters on for early trial.

Finally, as I have already indicated above, I find no evidence in the record of any serious prejudice to defendant resulting from the delay in question. Granted that the absence of a showing of prejudice to the defense at trial is not determinative of a

claim that the right to speedy trial has been denied, *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183, the absence of a showing of any prejudice in the instant case weighs heavily against defendant's claim that his right to a speedy trial was unconstitutionally denied.

By reversing this conviction on the ground set forth in the majority opinion, I fear that the court has failed to carry out properly the difficult and sensitive balancing process that the Court in *Barker v. Wingo* spoke of:

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

Although there may be much merit in imposing a duty upon trial courts to make a complete record in future cases of a defendant's acquiescence in his attorney's desire for a continuance, I would not retrospectively impose such a duty by voiding an otherwise valid conviction in a most serious criminal case.

I would affirm the conviction.

MORGAN, Justice (dissenting).

I would dissent. A thirty-three month interval between arrest and trial is a horrendous gap, but I can't see that the activities during the twelve months between October 31, 1972 and October 31, 1973, could possibly be more a detriment to the defendant than the activities during the remaining seventeen months until trial.

The first five months of the time frame give no problem because defense counsel was preparing for trial and had secured a date. The problem arose when almost simultaneously counsel on both sides was changed. Defense counsel asked for time to acquaint himself with the case and apparently he needed until mid-July to do so. This appears to be an inordinately long period, but this was not a minor offense, and he was defendant's counsel. If defendant was not satisfied with his representation he could change as he later did. Further, defense counsel admitted that he had not pushed the matter because he felt it good tactics to delay and let things cool down. This is not an uncommon tactic to let the case grow whiskers, and who is to say that it did not work. When defendant was tried, the conviction was for a lesser included offense.