STATE, Respondent v. STARNES, Appellant

(200 N.W. 2d 244)

(File No. 10944. Opinion filed September 6, 1972)

**Dale L. Morman,** Sturgis, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Thomas R. Vickerman,** Asst. Atty. Gen., Pierre, **William H. Coacher,** State's Atty., Meade County, Sturgis, for plaintiff and respondent.

WINANS, Judge.

The defendant, Donald Harrison Starnes, was charged with the crime of robbery in the first degree by a preliminary information, dated September 28, 1968, filed in justice court in Sturgis, Meade County, South Dakota by the State's Attorney of that county, charging that the offense took place on September 17, 1968 at Sturgis. The justice of the peace issued a warrant for the arrest of the defendant, dated September 28, 1968. The return of the sheriff, dated March 31, 1970 certifies that he has arrested the defendant and has him "now before the Court in custody". On April 3, 1970 the defendant appeared before the judge of the District County Court, Fifteenth District, South Dakota at the Meade County Courthouse. Upon questioning by the court the defendant replied that he had no attorney to represent him, that he wanted one and had no money to employ counsel, and that he had been in the penitentiary "eighteen months". Thereafter on July 2, 1970

the preliminary hearing was held, the state being represented by the State's Attorney and the defendant by his appointed attorney, at the conclusion of which the defendant was held to answer in the Circuit Court to the charge of robbery in the first degree. Trial of his action was had October 26 and 27, 1970 in the Circuit Court of the Eighth Judicial Circuit. The defendant was found guilty and was sentenced to be imprisoned in the state penitentiary for a period of ten years, said sentence to commence as of this date and shall run concurrent with sentence defendant is presently serving in the State Penitentiary.

It is the contention of the defendant that he was deprived of his constitutional right to a speedy trial as a result of the delay in bringing him to trial despite his requests for trial and also that the identification procedure of the defendant by the victim of the robbery was unnecessarily suggestive and denied him due process of law. In order to dispose of these assignments it is necessary to set forth and fill in additional details and factual background of the case from the date of the crime to the trial, a period of over two years.

The facts surrounding the commission of the crime appear undisputed. On the evening of September 17, 1968 two men took money and negotiable checks from the person of Donald Zacher, an employee of the Piggly Wiggly store in Sturgis, by threatening him with a hand gun in a well lighted parking lot next to the store. The person whom Zacher identified as the defendant Starnes was close enough to the victim to touch him with his gun, allowing Zacher to get a close inspection of Starnes' face. After the robbery took place, the victim made immediate complaint and thereafter on several occasions was shown a series of photographs from which he identified the robbers.

The defendant, Starnes, and another were charged with first degree robbery and grand larceny following an armed robbery of a grocery store in Beresford, Union County, South Dakota on September 27, 1968 and by an order of court dated October 4, 1968 were transferred from the Union County jail to the state penitentiary at Sioux Falls, South Dakota, for safekeeping and

detention. State ex rel. Starnes v. Erickson, 1971, 85 S.D. 489, 186 N.W.2d 502. Defendant was moved from the county jail to the state penitentiary on October 5, 1968 and has remained there except for those periods of time when he was returned to Sturgis for preliminary hearing and again for trial. On or about September 28, 1968 the Meade County Sheriff, accompanied by Donald Zacher, the complaining witness, went to Sioux Falls where the complaining witness identified the defendant Starnes. The identification was made in the Minnehaha County jail where several men, among whom was Starnes, entered a room and were visible to this complaining witness. This, in short, was the identification process at the jail. The victim was able to identify Starnes without any suggestions from law enforcement officials. On November 15, 1968 the Meade County authorities filed a detainer against defendant. It is defendant's contention that he informed John Egger, Meade County Sheriff, at the time of the identification in Minnehaha County that if "there were to be any charges placed (against him in Meade County,) he would desire and at that time did demand a fast and speedy trial in the matter." Whether this demand was actually made at that time or not, nowhere in the record is it disputed.

It is obvious from the record that the defendant did make repeated demands for a speedy trial or a dismissal of the charges against him after the filing of the detainer and it is also equally obvious that he was available for prosecution, being all of that time confined in the penitentiary at Sioux Falls. It appears that on August 11, 1969 the defendant in longhand composed an affidavit and motion for dismissal of complaint which was venued in the justice court of the city of Sturgis, in which he stated that at all times since October 5, 1968 he had been in the confines of the state penitentiary and that he was then serving a sentence of eight years and he asked for a dismissal of the charges pending against him in Meade County, giving as his reason that he was being denied his constitutional right to a speedy trial. He complained of the delays of correspondence between himself and the state's attorney and of the lapse of time of 316 days from September 28, 1968 to August 11, 1969 and he asked for a dismissal of the complaint based on such delay. His affidavit was to the

effect that he mailed true and correct copies thereof to the justice of the peace before whom the complaint had been filed and to the state's attorney of Meade County, all on August 11, 1969. The files disclose a letter dated August 14, 1969 from the state's attorney to the defendant stating as follows: "This is to acknowledge receipt of the petition and the matter will be taken up with the Justice of the Peace  *  *  *  early next week and you will be advised as to the deposition (disposition) of this matter. It may well be that the charges may be dismissed and a new complaint issued." On or about the 29th day of January, 1970 the defendant composed what he denominated an "Application for writ of prohibition". This was venued in the Circuit Court of the Eighth Judicial Circuit. In this application, among other things he asked the court to prohibit the officials of the state of South Dakota from prosecuting him on the charge pending in Meade County. He referred to his prior motion to dismiss the complaint made on August 11, 1969 in which he had called attention to the 316 days which had elapsed since the filing of the complaint and then called attention to the additional 138 days which "have elapsed since filing said motion, and again no legal action has been taken nor reason for not proceeding has been given". He also with said application for said writ of prohibition filed a poverty affidavit. This application was denied by the court by an order dated and filed February 19, 1970, the order reciting among other things, "It appearing that said States Attorney and Justice of the Peace are not acting without or in excess of the authority conferred by law upon them, it is hereby ORDERED that the plaintiff's petition for issuance of a writ of prohibition be denied."

The defendant in his own handwriting petitioned the circuit court for a rehearing in which he stated among other things that he had a right to a speedy trial and the officials had a duty to bring him to trial without delay and not having done so, his defense had been impaired and that because of the long delay he could not have a fair trial. This motion for rehearing was denied on March 11, 1970. On March 30, 1970 the state's attorney requested an order of the court authorizing the Meade County Sheriff to take temporary custody of the defendant from the state penitentiary and to return him to the jurisdiction of Meade County "to

answer the charges of First Degree Robbery which have been laid against the defendant". The order was made, the defendant was brought back and the proceedings had which we have heretofore set forth.

At the commencement of the trial the defendant's attorney asked for dismissal of the charges based upon delay, a violation of the defendant's constitutional right, and further for a violation of his statutory rights, mainly SDCL 23-34-2. At the conclusion of the state's case the motion was renewed with the further reason given "that a material witness herein, namely, one Douglas Brewer, who could have provided to this defendant an alibi is now deceased," and also that there were errors based upon the identification.

■ There can be no doubt that every accused, including this defendant, is entitled to a speedy and public trial. The Constitution of the United States, Article 6, provides in part as follows:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed  *  *  *."

Article 14 of the United States Constitution provides in part:

" *  *  *  nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

In Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1, the Supreme Court of the United States held that by virtue of the Fourteenth Amendment the Sixth Amendment right to a speedy trial is enforceable against the states, stating further, "The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution." Id., 386 U.S. at 226, 87 S.Ct. at 995, 18 L.Ed.2d at 9. And again quoting Klopfer, "We hold here

that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." Id., 386 U.S. at 223, 87 S.Ct. at 993, 18 L.Ed.2d at 9. Article 6, Section 7 of the South Dakota State Constitution is in accord with these basic rights, providing in part, "In all criminal prosecutions the accused shall have the right   *   *   *   to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." This right is likewise recognized as being one of the basic rights of a defendant in SDCL 23-2-11.

In Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, the Supreme Court wrote with reference to the constitutional guarantee as follows:

"Suffice it to remember that this constitutional guarantee has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system: '[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.' "

Our own court in State v. Opheim, 84 S.D. 227, 169 N.W.2d 716, was confronted with this very problem. In Opheim the defendant had made trial demands of the South Dakota law enforcement officials while he was incarcerated in the Kansas penitentiary. After about a two year delay he was taken into custody by the South Dakota officials and tried. Opheim claimed prejudice because of the belated trial and this court held: "that a defendant who demands but does not receive an immediate trial is not ipso facto entitled to his discharge and there must be at least some showing of prejudice in addition to a lapse of time." In Opheim we quoted at length from United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, where the court said:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth

Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950. 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 3 L.Ed.2d 1041."

In Opheim, supra, we stated "While we think the prosecuting officials under the rule now enunciated in Smith v. Hooey, supra, should have attempted to bring Opheim to trial after his demand therefor, nevertheless, under all the circumstances of the case at bar, including the length of the delay, the failure to show prejudice, or that the delay was purposeful, oppressive or improperly motivated, it is our opinion there was no deprivation of the constitutional right to a speedy trial and the conviction should stand." Opheim is cited by our sister state, North Dakota, in Morris v. McGee, August 1970, 180 N.W.2d 659, as well as Hooey, supra, for an indication "that a defendant who demands but does not receive an immediate trial is not ipso facto entitled to his discharge

and there must be at least some showing of prejudice in addition to a lapse of time." In most of the cases cited the defendant was held in custody in either a different state jurisdiction or in the federal prison. In our instant case the defendant was within the jurisdiction of the State of South Dakota at all times. In Morris, supra, the court said, "Incarceration in another jurisdiction, then, is not an excuse for inaction by law enforcement officials over a substantial period of months, but it does have an immediate bearing upon the reasonableness of the interval between the charge and the trial."

Since our decision in Opheim, July 1969, the United States Supreme Court has handed down its decisions in Dickey v. State of Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26, decided May 25, 1970, United States v. Marion et al., 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, decided Dec. 20, 1971, and Barker v. Wingo, Warden, 92 S.Ct. 2182, 33 L.Ed.2d 101, decided June 22, 1972. In Dickey, supra, where there was a delay of almost eight years and the defendant had unsuccessfully made repeated requests that the Florida State court either secure his return for trial or withdraw the detainer for failure to provide him a speedy trial the court said:

"The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases. Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial. This is brought sharply into focus when, as here, the accused presses for an early confrontation with his accusers and with the State. Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays

inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law.

In addition to exerting every effort to require the State to try him, there is present in this record abundant evidence of actual prejudice to petitioner in the death of two potential witnesses, unavailability of another, and the loss of police records. This is sufficient to make a remand on that issue unnecessary. We therefore reverse and remand to the District Court of Appeal of Florida, First District, with directions to vacate the judgment appealed from and direct the dismissal of any proceedings arising out of the charges on which that judgment was based."

Comparing Dickey, supra, with Opheim, supra, and our present case we note that in Dickey there was a delay for nearly eight years and in Opheim, two, and this one two. We also note that in Dickey the court's opinion, inferentially at least, gave weight to the question of prejudice, saying that there was actual prejudice and because of that fact, a remand on that issue was made unnecessary.

In Marion, supra, the question before the United States Supreme Court was whether dismissal of a federal indictment was constitutionally required by reason of a period of three years between the occurrence of the alleged criminal acts and the filing of the indictment. No specific prejudice was claimed or demonstrated. The District Court judge dismissed the indictment for "lack of speedy prosecution" at the conclusion of the hearing and gave as his reasons that since the government must have become a-ware of the relevant facts in 1967 the defense of the case 'is bound to have been seriously prejudiced by the delay of at least three years in bringing the prosecution that should have been brought in 1967, or at the very latest early 1968.' " The appeal was directly to the United States Supreme Court, which post-

poned consideration of the question of jurisdiction until the hearing on the merits of the case. The Supreme Court held that the court had jurisdiction and on the merits of the case reversed the judgment of the District Court. It held, "In our view, however, the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' an event which occurred in this case only when the appellees were indicted on April 19, 1970."

The majority opinion in Marion, supra, contains the following:

"The Sixth Amendment provides that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial  .  .  .  .' On its face, the protection of the amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch which is appropriate to assure him an early and proper disposition of the charges against him. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959)."

In the instant case the defendant Starnes probably realizing this court in its Opheim decision required prejudice as well as delay to be shown claimed there was actual prejudice because of the death of one Douglas Brewer whose testimony would establish an alibi defense. The only record of this is the motion by the defendant's attorney at the conclusion of the state's case and the affidavit of the defendant sworn to October 27, 1970, the concluding day of the trial.

The defendant offered no testimony at his trial, it being his position that the state had not established its case beyond a reasonable doubt.

█ SDCL 23-35-24 provides that "if the defendant proposes to offer evidence of an alibi, notice of the same must be served upon the state's attorney in advance as provided in chapter 23-37." SDCL 23-37-5 provides that a defendant shall give three days notice before a trial by serving upon the state's attorney and filing with the court a notice in writing of his intention to claim such defense, "which notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense", and SDCL 23-37-6 provides that in the event of failure to provide such notice the court may in its discretion exclude the same. What the truth is here we have no way of knowing but we are aware of the purpose of the above cited sections. Furthermore, the evidence submitted in this case on the part of the state was overwhelming as to defendant's participation. Under these circumstances, we do not believe the defendant has shown any prejudice to himself, based upon the death of some claimed alibi witness.

We note that in the approved draft (1968) of its standards relating to speedy trial, the American Bar Association approves the following relating to speedy trial time limits, "2.1 A defendant's right to speedy trial should be expressed by rule or statute in terms of days or months running from a specified event. Certain periods of necessary delay should be excluded in computing the time for trial, and these should be specifically identified by rule or statute insofar as is practicable."

We also note that the consequence of denial of speedy trial as recommended by the same standards, 4.1, is an absolute discharge.

We think the clearest explanation of the right to a speedy trial issue is contained in the case of Barker v. Wingo, supra. This opinion by Justice Powell for a unanimous court goes into the prior adjudications of that court and also discusses the rule

recommended by the ABA. It refers to the speedy trial right as "slippery". It rejects the concept that the Constitution "requires a criminal defendant to be offered a trial within a specified time period." It also rejects the so-called "demand waiver rule" which it says most states have recognized, "although eight States reject it." The opinion holds that the fixed time period goes further than the constitution requires and the demand waiver rule is insensitive to a right which the court deems fundamental. After rejection of these two inflexible approaches, the court adopts what it calls a "balancing test", in which the conduct of both the prosecution and the defendant is weighed. The court holds,

"A balancing test necessarily compels courts to approach speedy-trial cases on an **ad hoc** basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

"Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertehless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

"We have already discussed the third factor, the defendant's responsibility to assert his right. Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the right is being deprived. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

"A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because of the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.  *  *  *"

■ Applying the balancing test to the defendant's claims in this case, we find the record to show that the state, from the date of September 28, 1968 when it had issued out of justice court a warrant of arrest for the defendant knew the defendant was in the South Dakota state penitentiary and knew that he could be returned for trial without much difficulty, if any. September 28, 1968 was the date when the complaining witness identified the defendant. It's the date when defendant claims he first made demand for a speedy trial, which is not denied anywhere in the record; nor does the record show why the state did not

comply with the defendant's right to speedy trial. So far as the record is concerned, there is no showing on the part of the state that they were looking for a missing witness, or claimed any other excuse except one which is hereinafter set forth. It is also clear the defendant was claiming the right to a speedy trial on a number of occasions, some of which we have heretofore set forth. The state's attorney was aware of the defendant's demands. It is difficult to see what more the defendant might have done to assert his right and equally difficult to understand how the state could have so completely ignored those demands and defendant's rights. On November 15, 1968 a detainer was placed against the defendant at the penitentiary and it was not until March 30, 1970, a period of 18 months from the date of the warrant of arrest, that an application was made to have the defendant returned to Meade County for prosecution. On July 2, 1970 a preliminary hearing was held. There is no showing in the record that the delay was occasioned by crowded dockets or lack of judges or lawyers. At the beginning of the trial when the court was making some inquiries relative to the delay, the State's Attorney stated that "it was the position of the State, following the standards set forth by the Committee on Criminal Procedure which now has been adopted into a final draft and which is being recognized by many courts, while not formally adopted in this State, that on detainers there is required a certificate from the prisoner as well as the warden that a person is available for trial and while we received numerous pleadings, there's not such a certificate that was sent." This appears to us to be no excuse at all because there is no reason shown that the defendant would not have been available during any of the time he was incarcerated in the state penitentiary on the prior sentence.

On the question of prejudice to the defendant, we find it a little more difficult to come to grips with the problem. If during the interval of the delay the defendant actually lost an alibi witness, it could be argued that prejudice resulted. We have shown our feeling on this point in our prior discussion of the case. Nor was there oppressive pretrial incarceration because defendant was already in the penitentiary. It is possible and even probable that the defendant experienced anxiety and concern relative to

the case pending against him in Meade County. On the whole, we think the prejudice was not great. In Barker, supra, the court stated:

> "More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial."

Starnes did. The court in Barker also held:

> "The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possibly(e) remedy."

We are also aware of the rule announced in Beavers v. Haubert, 1905, 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950, also quoted in Barker, supra, "The right of speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."

Under the balancing formula and the facts of this case, we believe it is clear the defendant was denied his constitutional right to a speedy trial. It therefore becomes unnecessary to discuss the other assignments of error.

We therefore reverse and remand to the Circuit Court of Meade County, South Dakota, with directions to vacate the judgment appealed from and direct the dismissal of any proceedings arising out of the charges on which that judgment was based.

DOYLE, J., concurs.

BIEGELMEIER, J., concurs in reversal.

WOLLMAN, J., and HANSON, P. J., concur specially.

BIEGELMEIER, Judge (concurring in reversal).

I concur in the reversal of the judgment and dismissal of the action by reason of the denial of defendant's right to a speedy trial as required by both the state and federal Constitutions. This resulted from the failure of state court officers to take proceedings to bring the criminal action to trial despite the persistent requests of defendant who was available in the state at all times. I do not, however, agree that defendant had any right to a concurrent sentence.

As the judges are not in agreement as to the grounds upon which the judgment should be reversed, it becomes unnecessary to express my views of the weight to be given to any of the four factors of the "balancing test" set out in Barker v. Wingo, 92 S. Ct. 2182, 33 L.Ed.2d 101. Under the circumstances, the state's attorney should have seasonably proceeded to take steps to bring the defendant to trial, and when the situation was brought to the attention of the trial court it should have directed the state's attorney to so proceed or dismiss the action.

WOLLMAN, Judge (special concurrence).

I agree that under the balancing test announced in Barker v. Wingo, 92 S.Ct. 2182, 33 L.Ed.2d 101, defendant is entitled to have his conviction reversed. I reach this conclusion, however, only because I believe that defendant has shown that he suffered definite prejudice. SDCL 23-48-22 provides that:

"If the defendant has been convicted of two or more offenses before judgment on either, the judgment may be that the imprisonment on any one may commence at the expiration of the imprisonment upon any other of the offenses."

It is my opinion that this statute would have precluded Judge Cooper from declaring that defendant's sentence on the Meade County offense should be consecutive to the sentence on the

Lincoln County offense. This being the case, defendant lost the benefit of having his sentences run concurrently during that time which he was awaiting trial on the Meade County offense.

Even though the defendant did suffer some prejudice by the way of lost time, I would not hesitate to hold that the prejudice was outweighed by the state's interest in bringing the defendant to trial had the state's attorney offered a plausible explanation for the delay in returning defendant to Meade County to stand trial. To reverse the conviction of a twice convicted armed robber is a draconian vindication of the constitutional right to a speedy trial. We should require a clear showing of definite prejudice and the absence of any reasonable excuse for the delay as prerequisites for such drastic action.

Defendant has not shown any other prejudice. His claim of a deceased alibi witness, although it could perhaps have been more fully explored at the time the motion to dismiss was made during the course of the trial, received the judicial skepticism it deserved. Defendant's anxiety and concern, if any, relative to the case pending against him in Meade County would not constitute a sufficient showing of prejudice to warrant the dismissal of the charges against him in view of his prior criminal record (see State ex rel. Starnes v. Erickson; 85 S.D. 489, 493, 186 N.W.2d 502, 504, footnote 1) and in light of the fact that he was serving an eight year sentence on the Lincoln County offense.

The standard announced in Barker v. Wingo, supra, is fair, reasonable and workable. The requirement that an accused be afforded a speedy trial does not in my opinion require that our state's attorneys are bound to answer every beck and call of importunate prisoners, especially in view of the fact that with but two exceptions our state's attorneys serve on a part-time basis. I repeat my belief that it is only in cases where the state has shown no reasonable explanation for a lengthy delay and a defendant has shown specific prejudice resulting from the delay that the charges should be ordered dismissed.

I am authorized to say that Judge Hanson concurs in this special concurrence.