STATE of North Dakota, Plaintiff
and Appellee,

v.

Joseph D. DENNY, Defendant
and Appellant.

Crim. No. 965.

Supreme Court of North Dakota.

June 28, 1984.

Linda L. Watkins, Asst. State's Atty., and Kent A. Reierson, State's Atty., Williston, for plaintiff and appellee; argued by Linda L. Watkins.

Anseth & Zander, Williston, for defendant and appellant; argued by Janet Holter Zander, Williston.

GIERKE, Justice.

Joseph Duane Denny has appealed from a judgment of conviction entered on a jury verdict finding him guilty of two counts of delivery of a controlled substance. Sections 19–03.1–23(1)(a) and (b), 19–03.1–05(4)(o ), and 19–03.1–07(2)(d), N.D. C.C. We affirm.

The evidence, viewed in the light most favorable to the judgment of conviction, reveals that on the evening of July 15, 1982, Gary Wiley, a special agent of the North Dakota Drug Enforcement Unit, was introduced to Denny in a trailer at a campground facility in Williams County by a confidential informant working with the Williston Police Department. The confidential informant introduced Denny as "Joe." Denny and Wiley left the trailer, which was then occupied by several persons, to discuss Wiley's proposed purchase of a quantity of cocaine. Denny later went back to the trailer and returned with a package of cocaine, which Wiley purchased for $175.

Following this transaction, Wiley, in order to verify the identification of the person he had been dealing with, reviewed Denny's police file. The file, which was supplied to Wiley by Detective Bruce Kemmet of the Williston Police Department, contained a photocopy of a police photograph of Denny marked with the name "Joe Denny." Wiley, who was shown no other photographs, verified that the person in the photograph was the individual who had sold him the cocaine.

On the evening of August 28, 1982, Wiley and the confidential informant were at a convenience store in Williston when Wiley again met Denny. During this meeting, which was not prearranged, Wiley asked Denny "if there was any more cocaine in town." Denny, who appeared to recognize Wiley at this point, replied that although he could not obtain more cocaine at that time, he knew a person who had marijuana for sale. The confidential informant, Wiley, and Denny drove together to the Red Barn Trailer Court and Wiley gave Denny $60. Denny entered a trailer and returned with marijuana which he gave to Wiley.

Denny was arrested on August 22, 1983, approximately one week after being released from the State Penitentiary where he had been incarcerated after being convicted of an unrelated theft of property charge. Wiley, testifying at trial, identified Denny as the individual from whom he purchased the cocaine and marijuana. His testimony was corroborated by the confidential informant who also testified. Denny testified and denied both charges. Denny was found guilty of both delivery counts on October 12, 1983, and he was sentenced to the State Penitentiary for five years.

On appeal, Denny asserts: (1) that his right to due process was violated by a prejudicial delay in commencing prosecution until twelve to thirteen months after the alleged transactions; and (2) that his right to due process was violated by the trial court's failure to suppress Wiley's in-court identification testimony which he contends was tainted by an impermissibly suggestive identification procedure.

**I**

Denny claims that the charges should have been dismissed because his due process rights were violated by the State's twelve to thirteen month delay in commencing prosecution. Denny asserts that, as a result of this delay, he was unable to recall his whereabouts on the dates in question and was therefore unable to adequately assist in his "mistaken identity" defense. The State contends that the delay in this case was justified because of an on-going undercover investigation and that Denny has not made a sufficient showing that he was actually prejudiced by the delay.

▋ Preaccusatorial delay raises a claim under the due process clauses of the Fifth and Fourteenth Amendments rather than under the Sixth Amendment's guarantee of a speedy trial.[1] *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In *State v. Denny,* 350 N.W.2d 25 (N.D.1984), we were presented with a similar argument.[2] Following discussion and application of the *Lovasco* and *Marion* decisions, we concluded that a nine-month preaccusatorial delay under the facts of that case did not violate the defendant's due process rights.

▋ The following general principles governing claims of prejudicial preaccusatorial delay may be gleaned from our decision in *Denny:* (1) proof of actual prejudice is generally a necessary, but not in itself sufficient, element of such a claim; (2) the amount of delay alone does not establish prejudice per se; (3) legitimate investigative delay, "if not stretched to the breaking point," does not deprive a defendant of due process, even if his defense might have been somewhat prejudiced by the lapse of time; and (4) due process does not condone a state's intentional delay for the purpose of obtaining an advantage over the defend-

ant if the delay will cause prejudice to the defendant's right to a fair trial.

▋ The resolution of a due process claim based on preaccusatorial delay requires a balancing of the reasonableness of the delay against the prejudice to the accused. *United States v. Larson,* 555 F.2d 673 (8th Cir.1977); *United States v. Washington,* 504 F.2d 346 (8th Cir.1974); *United States v. Jackson,* 504 F.2d 337 (8th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975).

Detective Kemmet testified that a continuing undercover "sting" operation was being conducted in the Williston area and that all of the charges arising out of the investigation were filed at the same time so as not to endanger the entire investigation. Detective Kemmet stated:

"Due to the fact that we have had an investigation going on since that period of time involving both narcotics and a sting operation, and we didn't dare at any time take down anybody and arrest them right at the time or two or three months down the road because we had like four people involved as far as putting in a lot of time and money.

"We had the sting operation going on which was costing us approximately—at one point we had right around ten to fifteen thousand dollars stuck in that. And if we would have taken anybody down during that time and arrested them, we would have run a very high risk of blowing our dope operation and our sting operation."

▋ We are convinced that the continuing undercover investigation was legitimate and that under the circumstances of this case the twelve to thirteen month delay, which was well within the limits of the statute of limitations [*see* § 29–04–02, N.D. C.C.], was not "stretched to the breaking point." *See Denny, supra.*

---

**1.** Denny's reliance on Rule 48(b), N.D.R. Crim.P., as an additional ground for dismissal of the charges is misplaced. *See State v. Denny,* 350 N.W.2d 25, 27 n. 1 (N.D.1984).

**2.** The defendant in *Denny* is the brother of the defendant in this case. Although the factual situations differ somewhat in each case, two of the same issues raised in *Denny* have been raised in this appeal.

■ We also believe that Denny has failed to present a plausible claim of inability to recall events and has fallen far short of a showing of actual prejudice[3] to or specific impairment of his defense. As in *Denny, supra,* the evidence reflects that Denny remembered where he lived, who he was living with, and where he was working on the dates in question. He also remembered when he first met the confidential informant and the name of the informant's roommate. The trial court granted Denny's discovery motions and his motion for preservation of an alibi defense. Furthermore, the State ultimately revealed the identity of the confidential informant.

Having balanced the reasonableness of the delay against the alleged prejudice to the accused, we conclude that under the facts of this case Denny's due process rights were not violated by the twelve to thirteen month preaccusatorial delay.

## II

Denny also asserts that his due process rights were violated because Wiley's in-court identification was tainted by an impermissibly suggestive identification procedure. According to Denny, the flawed identification procedure took place when Wiley, following the first transaction but before the second transaction, viewed a single photocopy of a photograph marked "Joe Denny" which was contained in Denny's police file.

■ The determination of whether or not the viewing of a single photograph is so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification depends on the particular facts and circumstances of each case. *State v. Azure,* 243 N.W.2d 363 (N.D.1976). In *Denny, supra,* relying on *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53

L.Ed.2d 140 (1977), we noted several factors relevant in evaluating the suggestive nature of photographic identifications in cases where the identifying witness is an undercover police officer. These factors include "the opportunity of the witness to view the defendant at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the defendant, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Denny, supra,* 350 N.W.2d at 31. These factors are to be weighed against "the corrupting effect of the suggestive identification itself." *Manson, supra,* 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154.

■ The evidence reveals that Wiley had ample opportunity to observe the defendant during both transactions. Wiley testified that he was standing two to three feet from the defendant during the first transaction and that the lighting conditions "[a]lmost seemed like it was in the middle of the afternoon." Wiley testified that during the second transaction, which covered a period of approximately ten minutes, there was sufficient light at the convenience store so that he could recognize Denny from a distance of six to seven feet. During the drive to the trailer court, all three occupants of the car were seated on the front seat and Wiley was seated shoulder-to-shoulder with Denny. The confidential informant substantially corroborated Wiley's testimony. Wiley, who is a trained drug enforcement agent and aware that he may have to make an identification at a later date, testified that the person he dealt with on July 15, 1982, was the same person he dealt with on August 28, 1982, and that he had "no doubt" that the person was Denny.

Denny asserts that although Wiley had already seen the photograph before the

---

**3.** Denny also argues that the delay was prejudicial because it denied him the opportunity to receive concurrent sentences on his theft of property conviction and the drug-related convictions. We believe this contention is without merit. The theft of property and drug charges were totally unrelated. Furthermore, a convicted defendant does not have an absolute right to have his sentences run concurrently. *See, e.g.,*

*State v. Rudolph,* 260 N.W.2d 13 (N.D.1977). Although Denny's contention might appropriately have been raised before the sentencing court as a factor in determining an appropriate sentence, it does not constitute actual prejudice to his ability to present a defense to the criminal charges within the context of the due process concerns at issue.

second transaction occurred, "he had already been irreparably prejudiced in that Special Agent Wiley had already associated the name with the suspect's face." Denny does not deny that he is the person depicted in the photograph, and he does not assert that different individuals were involved in the two transactions. He claims only that he resembles his brothers and that he was not the person who sold the cocaine and marijuana to Wiley.

It is indeed difficult to conceive how a witness' view of a suspect's photograph before the crime occurs can irreparably contaminate, rather than bolster, the witness' subsequent identification of the suspect. We believe that because Wiley executed a second transaction with Denny after Wiley had viewed the photograph, the possibility of misidentification in this case is particularly unlikely.

We conclude that under the totality of the circumstances, Wiley's viewing of the single photograph did not give rise to a substantial likelihood of irreparable misidentification.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.