STATE of South Dakota, Plaintiff
and Appellee,

v.

Robert STOCK, Defendant
and Appellant.

No. 14386.

Supreme Court of South Dakota.

Considered on Briefs Sept. 10, 1984.

Decided Jan. 16, 1985.

Richard H. Wendt, Asst. Atty. Gen.,
Pierre, for plaintiff and appellee; Mark V.
Meierhenry, Atty. Gen., Pierre, on brief.

T.R. Pardy of Mumford, Protsch & Pardy, Howard, for defendant and appellant.

WOLLMAN, Justice.

Defendant appeals from his conviction on a charge of receiving stolen property. SDCL 22–30A–7. We affirm.

On February 4, 1980, a Bobcat skid-steer loader was stolen in Norfolk, Nebraska. On August 31, 1981, Wayne Everson, an agent with the South Dakota Division of Criminal Investigation, together with a special agent of the Federal Bureau of Investigation and the sheriff of Yankton County went to defendant's home in Spencer, South Dakota, with knowledge that defendant had a stolen vehicle on his premises. The three officers discussed with defendant the whereabouts and activities of certain unidentified persons. Defendant in no way indicated to the officers that he had possession of the stolen loader. After leaving defendant's home, the officers traveled the half-block distance to the Spencer Grain Company, where they observed a loader that matched the description of the one that had been stolen in Norfolk. Upon examining the serial number on the loader, the officers determined that it was indeed the one that had been stolen in Norfolk. That same day, August 31, Agent Everson spoke with Richard Kirby, owner of the Spencer Grain Company, and learned that Kirby had given defendant a check in the amount of $2,500.00 on July 2, 1981, in payment for the loader. On September 18, 1981, the owner of the loader came to Spencer from Norfolk and positively identified the machine as his.

On November 5, 1981, defendant pleaded guilty in federal court in Sioux Falls to a federal charge of receiving stolen property, unrelated to the loader in question, and received a five-year sentence. Defendant was incarcerated in a federal correctional institution in Oxford, Wisconsin, from November 26, 1981 to January 18, 1983, at which time he was released to the custody of a half-way house in Sioux Falls.

On December 23, 1982, Agent Everson signed a complaint charging defendant with receiving stolen property. On February 11, 1983, a detainer was issued by the McCook County sheriff, as a result of which defendant was placed in the South Dakota State Penitentiary as a federal boarder pending his anticipated release on parole on May 18, 1983. On February 15, 1983, defendant sent a letter to the circuit court of McCook County in which he set forth, among other things, a request that attorney Michael Luce of Sioux Falls, who had represented defendant in the federal criminal proceedings, be appointed to represent defendant in the McCook County action. Defendant also set forth a request for a speedy trial.

Defendant apparently wrote to attorney Luce on February 16, for on February 18, 1983, attorney Luce wrote to defendant regarding defendant's belief that the McCook County violation had been dismissed as a part of the plea bargain that resulted in defendant's pleading guilty in federal court. Mr. Luce advised defendant that in fact the dismissal of state charges was not part of the plea agreement. He suggested that defendant wait and see what might develop after he was released from the state penitentiary and then attempt to obtain counsel from McCook County.

Although the McCook County sheriff's detainer of February 11, 1983, stated in part that the McCook County state's attorney had set a court date for defendant on February 22, 1983, no hearing in fact was held on that date.

Defendant was arrested by the McCook County sheriff on May 16, 1983, upon defendant's release from federal custody from the South Dakota State Penitentiary. On May 18, 1983, attorney Leroy E. Wegener of Salem was appointed to represent defendant. A preliminary hearing was held on June 10, 1983, at which Agent Everson testified that by September 20, 1981, he had formed an opinion regarding the identity of the person who was responsible for the theft of the loader but that he needed more evidence. He testified that there was an on-going, simultaneous inves-

tigation concerning defendant in Yankton County. In response to defense counsel's request for an explanation of the length of time between the cessation of his investigation in McCook County and the date he signed the complaint against defendant, Agent Everson testified:

During this time, there was a multi-state task force investigation going on between the sheriff's offices in South Dakota, the State of Iowa and the F.B.I. We were working multiple cases in regard to stolen property, trafficking intercounty, inter-state. During that time, we recovered in excess of one million four hundred thousand dollars worth of property, and it takes time to figure out which case goes where, and who is responsible for what particular case, because many of these suspects were involved in multiple charge, multiple count investigations.

Agent Everson also testified that he had received information from other counties after September 20, 1981, that indirectly involved the McCook County case against defendant.

On July 15, 1983, defendant moved to dismiss the information on the grounds that he had been denied due process of law, his right to a speedy trial, his right to equal protection of law, his right to have a concurrent sentence imposed upon him while incarcerated in the federal correctional institution, and his rights under the Interstate Agreement on Detainers (IAD). SDCL ch. 23–24A. This motion was denied on July 21, 1983, and a jury trial was held on July 26, 1983, resulting in a verdict of guilty.*

Defendant raises two issues on appeal: (1) Whether the delay between the time the state's investigation was completed and the time the complaint was signed denied defendant his right to due process of law; and (2) whether the state's delay and tactics from the time of signing and filing the complaint until the time of trial denied de-

fendant his right to a speedy trial and to equal protection under the law. We answer both questions in the negative.

In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the United States Supreme Court held that the right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution arises only after the filing of a formal indictment or information or the arrest of a defendant. Accordingly, the delay between the commission of an offense and the filing of a charging document or the arrest of a defendant implicates no Sixth Amendment speedy trial right. The Court went on to acknowledge, however, that statutes of limitations governing the initiation of formal proceedings against the defendant do not fully define a defendant's rights with respect to the events occurring prior to the filing of an indictment or information. The Court pointed out that the government had conceded that the due process clause of the Fifth Amendment would require dismissal of the indictment if it were shown that the pre-indictment delay had caused substantial prejudice to the defendant's rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the defendant. In view of the fact that the record before it did not reveal actual prejudice to the conduct of the defense nor a showing that the government had intentionally delayed to gain some tactical advantage over or to harass the defendants in that case, the Court held that the thirty-eight month delay between the end of the criminal scheme and the date the defendants were indicted was not sufficient reason to justify the dismissal of the indictment prior to trial.

In *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), the Court expanded upon the pronouncement set forth in *Marion*. The Court rejected the defendant's argument that the due process clause bars prosecution when-

---

* Although it appears from the record that a Part 2 information was filed against defendant charging him with being a habitual offender,

the record does not reveal that any disposition was made on this charge.

ever a defendant suffers prejudice as a result of pre-indictment delay, pointing out that *Marion* clearly stands for the proposition that "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." 431 U.S. at 790, 97 S.Ct. at 2048–49, 52 L.Ed.2d at 759.

The Court rejected the argument that prosecutors are under a duty to file charges as soon as probable cause exists but before they are satisfied that they will be able to establish the defendant's guilt beyond reasonable doubt. Likewise, the Court rejected the argument that the prosecution is constitutionally required to file charges promptly upon assembling sufficient evidence to prove guilt beyond a reasonable doubt. The Court pointed out that such a rule

> would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act. In some instances, an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice. In other cases, the prosecutor would be able to obtain additional indictments despite an early prosecution, but the necessary result would be multiple trials involving a single set of facts. Such trials place needless burdens on defendants, law enforcement officials, and courts.

431 U.S. at 793, 97 S.Ct. at 2050, 52 L.Ed.2d at 761. Such a rule would also have the effect of pressuring prosecutors into resolving doubtful cases in favor of early, and perhaps unwarranted, prosecutions, and in certain cases would prevent the prosecution from giving full consideration to the desirability of not prosecuting. *Id.*

■ Holding that there is no clear constitutional command in the due process clause of the Fifth Amendment requiring the prompt initiation of criminal prosecutions, the Court pointed out that investigative delay is fundamentally different from delay undertaken by the government solely to gain tactical advantage over a defendant. So long as there are valid, good faith reasons for the investigative delay, a defendant is not deprived of due process even if his defense has been somewhat prejudiced by the lapse of time between the date the government acquires sufficient evidence to establish probable cause or to establish guilt beyond a reasonable doubt and the date it files an indictment or information against a defendant. *Id.* 431 U.S. 795–96, 97 S.Ct. 2051–52, 52 L.Ed.2d 762–63.

Defendant contends that he suffered prejudice as a result of the delay in the filing of the complaint against him by reason of the fact that had he been promptly prosecuted on the state charge, any sentence imposed thereon would have been served concurrently with the sentence he was serving on the federal charges. Likewise, defendant contends that had a detainer been filed against him promptly, he could have asserted his right to a speedy trial on the state charge pursuant to the provisions of the IAD. SDCL 23–24A–3.

Granted that defendant may have suffered some prejudice as a result of losing those rights, we conclude that when measured against the standards set forth in *United States v. Marion, supra,* and *United States v. Lovasco, supra,* the state adequately established on the record through the testimony of Agent Everson a valid, good faith reason for the delay in filing the complaint against defendant.

■ Although we recognize full well that the explanation for the preaccusatorial delay came from the investigating officer himself rather than from the prosecuting attorney, we apply the same test that the Court applied in *Lovasco, supra,* and assume that these statements were made in good faith. 431 U.S. at 796, 97 S.Ct. at 2052, 52 L.Ed.2d at 763. Accordingly, in the light of Agent Everson's explanation, and in the absence of any showing by defendant that he suffered any actual prejudice in terms of defending himself on the merits, we hold that defendant's due pro-

cess rights under the federal constitution and the constitution of the State of South Dakota were not violated. *See State v. Weisz,* 356 N.W.2d 462 (N.D.1984); *State v. Denny,* 351 N.W.2d 102 (N.D.1984).

 In so holding, however, we do not mean to suggest that preaccusatorial delay by the state will routinely be held not to result in due process violations. We agree with the Court of Appeals for the Eighth Circuit that "[e]ven the legitimate excuse of a continuing undercover investigation may be stretched to the breaking point; at some point, the accused's right to due process of law must prevail." *United States v. Jackson,* 504 F.2d 337, 340 (8th Cir.1974) (footnote omitted). *See also State v. Denny, supra.* Moreover, we hold that the burden of establishing justification for preaccusatorial delay rests squarely upon the state.

 We likewise hold that defendant's speedy trial argument and equal protection arguments are without merit. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court set forth four factors that are to be applied in determining whether a defendant's Sixth Amendment right to a speedy trial has been violated: (1) The length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. *See State v. Holiday,* 335 N.W.2d 332 (S.D.1983); *State v. Krana,* 272 N.W.2d 75 (S.D.1978); *State v. Robideau,* 262 N.W.2d 52 (S.D.1978); *State v. Black Feather,* 249 N.W.2d 261 (S.D.1976); *on remand State v. Black Feather,* 266 N.W.2d 563 (S.D.1978); *State v. Runge,* 89 S.D. 376, 233 N.W.2d 321 (1975); *State v. Walton,* 87 S.D. 611, 213 N.W.2d 467 (1973); *State v. Pickering,* 87 S.D. 331, 207 N.W.2d 511 (1973); *State v. Starnes,* 86 S.D. 636, 200 N.W.2d 244 (1972).

 After applying the *Barker v. Wingo* factors to defendant's case, we conclude that defendant was not deprived of his right to a speedy trial either under the Sixth Amendment to the United States Constitution or under South Dakota Constitution, art. VI, § 7. Even if we use as the starting point for measuring the delay the signing of the complaint on December 23, 1982, the seven-month period that elapsed prior to the trial was not so lengthy, when measured against the alleged prejudice resulting therefrom, as to constitute a constitutional violation. True, had defendant been brought to trial and sentenced at any time prior to May 16, 1983, his sentence would have run concurrently with the sentence he was serving on the federal charge, but the period of that concurrency would have been so brief, relatively speaking, that the deprivation thereof does not rise to constitutional dimensions. Defendant does not allege that the post-complaint delay prejudiced his ability to stand trial on the merits of the McCook County charge. *Cf. State v. Starnes, supra.* Granted that defendant requested a speedy trial in his letter of February 15, 1983, the initiation of pre-trial and trial proceedings followed within a reasonable time thereafter, certainly sooner than within the one-hundred-eight-day maximum period allowed the state under the IAD. SDCL 23–24A–3.

The judgment of conviction is affirmed.

FOSHEIM, C.J., and MORGAN, J., concur.

HENDERSON, J., and McKEEVER, Circuit Judge, concur in part and dissent in part.

McKEEVER, Circuit Judge, sitting for WUEST, Acting Justice, disqualified.

HENDERSON, Justice (concurring in part, dissenting in part).

It is the preaccusatorial delay which is so very disturbing in this case. We hold, as I understand it, that this appellant may have suffered some prejudice as the result of preaccusatorial delay. Nonetheless, applying two relevant and fairly recent United States Supreme Court decisions, viz *Marion* and *Lovasco,* to the facts of this case, we ultimately conclude that there was a valid, good faith reason for the delay in filing the complaint against appellant. I

agree that the burden is upon the State to establish justification for delay once delay and prejudice have been demonstrated. *People v. Johnson,* 62 Cal.App.3d Supp. 1, 133 Cal.Rptr. 123 (1976). Conceding that there was prejudice here from this delay, the State must show that the delay was explainable, unintentional, and did not cause any undue prejudice to this appellant. *People v. Fraker,* 63 Mich.App. 29, 233 N.W.2d 878 (1975).

This takes us to the critical question: Has the State of South Dakota met its burden of proof? Relying upon Agent Everson's statement, the majority concludes that the State has met its burden. I would be remiss if it were not brought out that the state's attorney answered the trial judge's question, in open court, as to why there was a delay in signing the complaint, thusly:

> Mr. Everson did indicate that the crime in McCook County, the investigation was completed sometime ago; however, he said this was a multiple State investigation, and exactly when the investigation was completed, I'm not sure. I don't think Mr. Everson did give an exact date when asked the question. He was asked the question why did he wait so long, and when was the entire case completed as far as the investigation is concerned. But, he said it involved three or four states and it was an ongoing thing. Granted, one segment of the case or the commission of the crime may have been established, but since it was a multiple State thing, the investigation continued on and on. Because of that your Honor, the investigation certainly did not consummate what establishment of the crime in McCook County. Other crimes were being established or investigation in that. That was the reasoning behind the delay and the Defendant was under the Federal prosecution or in the Federal pen.

Surely, an on-going investigation involving defendant was, if that is the truth, a legitimate reason for delay. However, the fact that the defendant was under the federal prosecution or in the federal penitentiary is not a legitimate reason for delay. A federal prisoner has a right to a speedy trial on a state charge. *Weiss v. Blackwell,* 310 F.Supp. 360 (N.D.Ga.1969). If a state files a detainer against a federal prisoner, that state is under a constitutional obligation to make a good faith effort to try the accused within a reasonable time. Ordinary expedition, not mere speed, is essential in bringing a federal prisoner to trial on state charges. *Lawrence v. Blackwell,* 298 F.Supp. 708 (N.D.Ga.1969). The entire purpose of the Interstate Agreement on Detainers is directed toward the prompt and orderly disposition of untried charges brought against a person currently in confinement. *Robison v. State,* 278 N.W.2d 463 (S.D.1979). *See* SDCL 23–24A–1.

There are two general types of prejudice arising from pretrial delay. One is related to anxiety over a pending charge accompanied with the prejudice inherent in his person in the form of incarceration. The other is prejudice to a defense from the loss of evidence or witnesses. *People v. Harris,* 110 Mich.App. 636, 313 N.W.2d 354 (1981).

It appears that on August 31, 1981, DCI Agent, Wayne Everson, the complainant, Leon Cantin of the FBI, and the sheriff of Yankton County went to the premises of this appellant with the knowledge that the appellant had a stolen vehicle. On September 20, 1981, the investigation in McCook County had been completed by South Dakota DCI Agent Wayne Everson. It appears, just as the state's attorney told the trial court, that the investigation had been completed. Preaccusatorial delay then commenced. It thereafter continued. The jury trial in this case would establish that the testimony and evidence introduced at the time of trial to convict this appellant was in the State's possession by September 20, 1981. It appears to this writer that when the DCI agent discovered that the appellant had been released from the federal penitentiary in Oxford, Wisconsin, unto a place called the "Glory House" in Sioux Falls, South Dakota, the agent was quite dissatisfied with the federal penal system

or it triggered a desire within him to then prosecute defendant and he decided to file the complaint against this appellant for purposes of additionally punishing the appellant. In fact, to apparently avoid the service of concurrent time, the McCook County Sheriff's Office sent a warrant to the United States Marshall's Office on February 17, 1983, but with a request that it not be served on this appellant prior to May 1983, the date that he was to be paroled from federal custody. This looks bad.

The general right to a speedy and public trial guaranteed by the Sixth Amendment to the United States Constitution is encompassed within the Due Process Clause of the Fourteenth Amendment and is thus applicable to the states. *Townsend v. Superior Court of Los Angeles County*, 15 Cal.3d 774, 126 Cal.Rptr. 251, 543 P.2d 619 (1975). It is the right to due process which my writing attends. Due process attends between the time when the offense is committed and the arrest or filing of the complaint (this is distinguished from the constitutional speedy trial doctrine). As the majority opinion recognizes in *Jackson*, there can be a breaking point in a so-called continuing undercover investigation. If that breaking point has been exceeded, due process must prevail and the accused's right thereto must be honored. Do we really have a record before us, in this case, which can justify a piercing judicial inquiry into the reasons as to why law enforcement took so long to bring this case against this appellant? An admission to the trial judge that the defendant was either under federal prosecution or in the federal penitentiary is not a legitimate reason for non-prosecution. *See State v. Opheim*, 84 S.D. 227, 169 N.W.2d 716 (1969). Had appellant Stock been tried relatively promptly, he very well could have received a concurrent sentence. Therein, alone, lie prejudice. As scholars of the law, do we simply dismiss this?

I do not disagree with the majority's treatment of Issue Two. The real nub of this case involves the preaccusatorial delay. As I earlier pointed out, the State of South Dakota carries the burden of establishing a legitimate justification for preaccusatorial delay. This is a question of fact and the record is too skimpy for me to rule from an appellate loft. Therefore, I would remand this case back into the trial arena for an evidentiary hearing which would develop, under oath, all of the facts behind this delay, and thereupon have the trial judge enter findings of fact and conclusions of law so that a just determination could be made as to whether the State of South Dakota met its burden of proof in the trial court.

I am authorized to state that Judge McKEEVER joins in this writing.