#29135-a-SRJ
**2021 S.D. 36**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

JUSTIN DUANE LANGEN,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON SOGN
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

SARAH L. THORNE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
                                           appellee.


CHRISTOPHER MILES of
Minnehaha County Public
   Defender's Office
Sioux Falls, South Dakota                    Attorney for defendant and
                                           appellant.

* * * *

CONSIDERED ON BRIEFS
APRIL 20, 2020
REASSIGNED
FEBRUARY 19, 2021
OPINION FILED **06/16/21**

JENSEN, Chief Justice (on reassignment).

[¶1.]    Justin Langen was convicted of possession of a controlled substance and several misdemeanor offenses. He appeals, arguing the circuit court erred by denying his motion to dismiss for a violation of the 180-day speedy trial rule. We affirm.

## Facts and Procedural History

[¶2.]    On June 10, 2018, Langen was arrested following a traffic stop in Minnehaha County. During the stop, he was uncooperative and provided law enforcement with false information. Law enforcement also found methamphetamine in his vehicle. In her report, the arresting officer noted that Aurora County had an outstanding warrant for Langen's arrest due to a probation violation.

[¶3.]    The next day, the Minnehaha County State's Attorney's Office filed a seven-count complaint against Langen. An initial appearance was held on the same day.[1] The court scheduled a preliminary hearing for July 24, 2018, and appointed a public defender (PD) from the Public Defender's Office (PDO) as Langen's attorney. The State recommended that Langen be released on a personal recognizance bond but requested a bond condition requiring Langen to appear for urinalysis (UA) at

---

1.    The complaint charged Langen with: count 1-possession of a controlled substance in violation of SDCL 22-42-5 (methamphetamine); count 2-obstructing a law enforcement officer or jailer in violation of SDCL 22-11-6; count 3-resisting arrest in violation of SDCL 22-11-4(1); count 4-intent to deceive a law enforcement officer in violation of SDCL 22-40-1; count 5-possession of drug paraphernalia in violation of SDCL 22-42A-3; count 6-operating a motor vehicle without two head lamps and rear lamps in violation of SDCL 32-17-4; and count 7-driving without a license in violation of SDCL 32-12-22. The State dismissed count 2 prior to trial.

the Minnehaha County Sheriff's Office twice a week as part of the County's 24/7 program. Langen did not oppose the State's recommendation. However, he expressed concern that he would not be able to comply if he was detained on the Aurora County warrant.

[¶4.]     The court responded by instructing Langen to "make sure . . . when you get out [to Aurora County] . . . [to] talk to the 24/7 folks either there or here, and get it set up to do the UAs, okay?" Langen agreed, and the court issued the personal recognizance bond with the 24/7 bond condition. The court also instructed Langen that the bond was "conditioned upon you staying in contact with your lawyer, . . . [and] comply[ing] with the 24/7 program by providing two UAs a week . . . ." Langen was transported from the Minnehaha County Jail to the Davison County Jail two days later, where he was held pending resolution of the Aurora County probation violation.[2] Because Langen was incarcerated on the Aurora County charge, he failed to appear for his first UA on June 15, 2018, in Minnehaha County.

[¶5.]     On June 22, 2018, the Minnehaha County Sheriff's Office filed a 24/7 violation report with the circuit court, which stated that Langen "was released from jail [on] June 13, 2018[,] . . . has not tested elsewhere in the state[,] and court records do not indicate any changes have been made." Later that day, Sergeant Kurt Schaunaman prepared an affidavit requesting an arrest warrant based on the bond violation. The court issued a no bond warrant for Langen's arrest.

---

2.     Davison County houses inmates for Aurora County.

[¶6.]　　　On July 19, 2018, a hearing was held in Aurora County on Langen's probation violation, in which Langen admitted to violating the terms of his probation. The Aurora County court revoked Langen's suspended execution of sentence and imposed a four-year penitentiary sentence. Shortly thereafter, he was transported to the South Dakota State Penitentiary to begin serving his Aurora County sentence. Langen and his PD did not inform Minnehaha County about his status either before or after the Aurora County hearing and sentencing decision.

[¶7.]　　　The same day, a Minnehaha County grand jury indicted Langen for the seven offenses listed in the complaint. The State also filed a part II information, alleging that Langen was a habitual offender. An arraignment date was not scheduled at that time, but the bench warrant for Langen's failure to appear for his UAs remained outstanding.[3]

[¶8.]　　　On October 29, 2018, Sergeant Schaunaman filed a letter with the circuit court that requested cancellation of the Minnehaha County warrant. In the letter, Sergeant Schaunaman stated that Langen did not appear for his UAs "due to being in custody in another jurisdiction." The record does not show how Minnehaha County learned that Langen was incarcerated. The court cancelled the warrant the following day.

[¶9.]　　　On December 6, 2018, 179 days after his initial appearance, Langen signed a notarized letter that requested the court honor his "ri[ght] for due process" by granting him a prompt hearing on the pending Minnehaha County charges. The

_____

3.　　At the hearing on the motion to dismiss in August 2019, the State and Langen agreed that it is customary for the defense counsel to schedule an arraignment hearing in Minnehaha County.

letter also asked the court to cancel Langen's Minnehaha County warrant, indicating that Langen knew about his outstanding warrant before it was cancelled in October. In addition, Langen claimed that he had complied with the conditions of his bond by maintaining contact with his PD, although Langen complained his PD never responded to his communications. The Minnehaha County Sheriff's Office transported Langen from the state penitentiary to Minnehaha County for arraignment two weeks later.[4]

[¶10.]    At the time of the arraignment, Langen's PD was no longer employed by the PDO. Langen completed an application for court-appointed counsel and was assigned another attorney from the PDO at the arraignment hearing. The court also issued a scheduling order and set trial for April 1, 2019, to which Langen did not object. Beginning on March 7, 2019, Langen brought the first of six motions that pushed the trial back until August 22, 2019.

[¶11.]    On June 27, 2019, Langen submitted another letter that was filed with the Minnehaha County Clerk of Courts, in which Langen reasserted that his former PD failed to communicate with him and advanced the same complaint against his current counsel. In the letter, Langen also asked the court to dismiss the indictment on the grounds that his 6th Amendment speedy trial rights had been violated. On August 2, 2019, Langen's counsel filed a motion to dismiss the case with prejudice due to a violation of the 180-day speedy trial rule, asserting that more than 180 days had lapsed between Langen's initial appearance on June 11,

---

4.    The record does not indicate to whom Langen sent this letter, and the letter was not filed with the circuit court until June 27, 2019.

2018, and March 7, 2019, when Langen brought the first of several motions to continue the trial. The parties agree that these motions tolled the 180-day timeframe.

[¶12.] The court held a hearing to address Langen's complaints about his counsel on August 7, 2019. Langen asserted that he maintained contact with his former PD after he was transported to Aurora County "about my situation with . . . sentencing" but heard nothing back. He claimed that he made several attempts to contact his PD, including leaving messages, until October 2019 when his girlfriend learned that Langen's former PD was no longer employed by the PDO and the PDO had closed its file on Langen. Langen also claimed his new court-appointed attorney had failed to maintain contact with him. The circuit court found Langen did not establish good cause for the appointment of new counsel.

[¶13.] On August 14, 2019, the circuit court held a hearing on Langen's motion to dismiss for a violation of the 180-day speedy trial rule. Langen argued that because he was in custody from July 19, 2018 to October 29, 2018, he was not unavailable under SDCL 23A-44-5.1(4)(d), and the delay from this period was attributable to the State. The State responded that Langen was unavailable during this time, and good cause existed for this delay because Langen had an outstanding warrant. The State further argued the lapse of communication between Langen and his PD may have partially accounted for the delay and that any delay caused by these communication problems was not attributable to the State.

[¶14.] The court took the matter under advisement and issued oral findings of fact and conclusions of law the next day. Among other periods, the court excluded

the period in which the Minnehaha County warrant was outstanding and denied the motion. It held this delay was caused by Langen's absence or unavailability. Alternatively, the court held there was good cause to exclude this period because of the outstanding warrant.

[¶15.] To preserve his right to appeal the circuit court's speedy trial ruling, Langen waived his right to a jury trial and requested a court trial. A stipulated bench trial took place on August 22, 2019, in which Langen agreed to the admission of the State's exhibits and evidence. The court found Langen guilty of the charges, including the felony possession of a controlled substance, and determined that Langen was a habitual offender as alleged in the part II information. The court imposed a three-year suspended penitentiary sentence on the conviction for possession of a controlled substance and imposed suspended jail sentences on the misdemeanor convictions.

[¶16.] Langen appeals and raises a single issue for our review: whether the circuit court erred in denying his motion to dismiss the indictment for a violation of the 180-day rule.

## Analysis and Decision

[¶17.] We review de novo "whether the 180[-]day period has expired as well as what constitutes good cause for delay . . . ." *State v. Andrews*, 2009 S.D. 41, ¶ 6 n.1, 767 N.W.2d 181, 183 n.1. "A circuit court's findings of fact on the issue of the 180-day rule are reviewed using the clearly erroneous rule." *State v. Seaboy*, 2007 S.D. 24, ¶ 6, 729 N.W.2d 370, 372.

#29135

[¶18.]     The "180-day rule" is a rule of procedure that is designed to move cases expeditiously through the court system.  It requires that a defendant is brought to trial within 180 days from the defendant's first appearance before any "judicial officer on an indictment, information or complaint." *Andrews*, 2009 S.D. 41, ¶ 7, 767 N.W.2d at 183 (quoting SDCL 23A-44-5.1(2)).  A violation of the "rule is not synonymous with [a] violation of a constitutional right to a speedy trial." *Hays v. Weber*, 2002 S.D. 59, ¶ 16, 645 N.W.2d 591, 596.

[¶19.]     SDCL 23A-44-5.1(4) provides that certain "periods shall be excluded" from the 180-day period, including:

> (a) The period of delay resulting from other proceedings
>     concerning the defendant . . . ;
>
> (b) The period of delay resulting from a continuance granted at
>     the request or with the consent of the defendant or his
>     counsel provided it is approved by the court and a written
>     order filed[;]
>                                      . . . .
> (d) The period of delay resulting from the absence or unavailability of
>     the defendant;
>                                      . . . .
> (g) Other periods of delay not specifically enumerated herein,
>     but only if the court finds that they are for good cause.  A
>     motion for good cause need not be made within the one
>     hundred eighty day period.

[¶20.]     Langen does not challenge the circuit court's decision to exclude 206 of the 437 days between the time of Langen's first appearance and the trial.  These days included periods during which the Aurora County charges were pending as well as the delay caused by Langen's requests for trial continuances.  The only dispute involves the 102 days excluded by the circuit court between July 19, 2018 and October 29, 2018: the period after Langen's Aurora County charges were

-7-

resolved but the Minnehaha County bench warrant remained outstanding. If the circuit court properly excluded this 102-day period, Langen was tried within 134 days of his initial appearance.

[¶21.]     We first consider whether the circuit court properly excluded the time under SDCL 23A-44-5.1(4)(d) as "resulting from [Langen's] absence or unavailability . . . ." In *State v. Webb*, this Court affirmed the circuit court's exclusion of a 41-day period during which the defendant had an outstanding bench warrant due to his failure to maintain contact with his attorney and appear before the court. 539 N.W.2d 92, 96 (S.D. 1995). We concluded that the defendant was unavailable while the bench warrant remained outstanding and that the delay was attributable to the defendant under SDCL 23A-44-5.1(4)(d). *Id.* *Webb* differs from this case because Langen remained incarcerated elsewhere on unrelated charges while the warrant was outstanding. Nevertheless, we apply *Webb's* analysis to determine whether the absence or unavailability exception applies and whether the delay was attributable to Langen.

[¶22.]     Langen argues that he was not unavailable because he was incarcerated in the state penitentiary while the warrant was outstanding, and Minnehaha County could have transported him for arraignment and other court proceedings, including trial, at any time.[5] However, Langen's argument reads SDCL 23A-44-5.1(4)(d) too narrowly. The language of the Rule is implicated when a defendant is unavailable or *absent*. It is undisputed that Langen failed to appear

---

5. The record shows that Langen was being held at the Yankton Community Work Center during at least part of the time that his case was pending in Minnehaha County.

for his UAs in Minnehaha County or explain his absence. The court in Minnehaha County issued a warrant for Langen's arrest because of his failure to appear. Then, despite the outstanding warrant, neither Langen, nor his attorney, notified Minnehaha County of Langen's status either before or after his sentencing in Aurora County.

[¶23.] Langen also argues that he was not absent or unavailable because his UA appearances were excused while he was incarcerated, and the bench warrant should never have been issued. However, the appearances for UAs were a condition of his release in Minnehaha County, and it is undisputed that Langen failed to appear for the required UAs. Langen's conditions for release were clear and did not include any exceptions. Langen indicated that he understood the conditions at the hearing and acknowledged the conditions in writing. Further, the magistrate court never suggested that Langen's bond conditions would be excused based upon the Aurora County proceedings. To the contrary, the magistrate judge recognized that Langen would likely be transported to Aurora County after he was released on bond and instructed Langen to make arrangements to comply with his bond conditions once he arrived. There is also no evidence that Minnehaha County was aware of Langen's incarceration on the Aurora County convictions until October 29, 2018, when the bench warrant was recalled.

[¶24.] Langen cites no authority to support his claim that his incarceration excused the conditions of his bond. Langen's failure to appear for UAs is analogous to a defendant who is unable to attend a court-ordered hearing. Even if a defendant has a legitimate excuse for failing to appear, the defendant's court-ordered

obligation remains in effect until the defendant contacts the court and the court excuses the appearance. *See Foster v. State*, 372 N.W.2d 468, 469 (S.D. 1985) (rejecting a defendant's argument that he did not violate South Dakota's failure to appear statute, SDCL 23A-43-31, because he had not been released from custody on another charge at the time of his required appearance). The circuit court properly determined that Langen was absent given his failure to appear for twice-weekly UAs or to request a modification to his bond conditions.

[¶25.] Langen relies on *State v. Steele*, 624 N.W.2d 1 (Neb. 2001), to argue that even if he was unavailable or absent, the delay was still attributable to the State because it voluntarily released him from custody knowing he would be transported to Aurora County due to his outstanding arrest warrant there. In *Steele*, the defendant was released on bond on a felony mischief charge. 624 N.W.2d at 3-4. Nebraska authorities subsequently took the defendant into custody on an unrelated Colorado warrant. *Id.* at 4. The defendant had an upcoming jury trial in Nebraska on the original mischief charge, but he waived extradition; and Nebraska authorities returned the defendant to Colorado under the Uniform Extradition Act. *Id.* Approximately two months later, the defendant's court-appointed attorney on his Nebraska charge appeared at a pretrial conference and informed the prosecutors' office that the defendant was ready for trial, but he was still incarcerated in Colorado and needed to be transported back to Nebraska to face the charges. *Id.* However, Nebraska did not issue a detainer for another two months that would allow the defendant to be transported back to Nebraska. *Id.*

[¶26.] The Nebraska Supreme Court determined the defendant's absence or unavailability was attributable to the prosecution because "the extradition had the effect of preventing [the defendant] from requesting a speedy disposition of his pending charges in Nebraska." *Id.* at 8. "Where the State has discretion to hold a defendant until trial and the prosecuting attorney has knowledge of extradition proceedings, the defendant's unavailability should be attributed to the State." *Id.* The court also relied upon the prosecution's failure to lodge a detainer for more than four months, noting that this delay prevented the defendant "from requesting a speedy disposition . . . ." *Id.*

[¶27.] Langen's reliance on *Steele* is misplaced. Unlike *Steele*, in which the defendant had the fugitive warrant from another jurisdiction, Langen was released on the condition that he submit to UAs twice a week, and he was instructed to provide notice if he was not able to comply with his bond conditions. Further, unlike *Steele* in which the State of Nebraska waited months to lodge a detainer, the Minnehaha County prosecutors were not dilatory in their effort to secure Langen's presence. Within a week of Langen's missed appearance, Minnehaha County verified that Langen failed to meet the conditions of his bond and requested a bench warrant. Further, after Langen was convicted of the Aurora County charges, neither he nor his counsel notified Minnehaha County of his status or that the proceedings in Aurora County had been completed for nearly five months. Two weeks after Langen penned his December 2018 letter advising Minnehaha County of his status, he was transported back for an arraignment. Under these

circumstances, the circuit court properly determined that the delay caused by Langen's absence from Minnehaha County was attributable to him.

[¶28.] We also conclude that the circuit court properly excluded the 102 days for good cause. In determining whether good cause exists to exclude days under SDCL 23A-44-5.1, we have consistently distinguished between delays attributable to the State and delays attributable to the defendant. *See*, *e.g.*, *State v. Two Hearts*, 2019 S.D. 17, ¶ 10, 925 N.W.2d 503, 509; *Seaboy*, 2007 S.D. 24, ¶ 12, 729 N.W.2d at 373; *Weber*, 2002 S.D. 59, ¶ 17, 645 N.W.2d at 598; *State v. Sparks*, 1999 S.D. 115, ¶ 6, 600 N.W.2d 550, 553; *Webb*, 539 N.W.2d at 95. In addition, in considering good cause, our focus is on the reason for the delay. *See State v. Cooper*, 421 N.W.2d 67, 70 (S.D. 1988).

[¶29.] Langen argues that the State cannot establish good cause because it was aware of the warrant in Aurora County and could have easily determined Langen's whereabouts after he failed to appear for his UAs. Under Langen's proposed rule, the State would be placed in the untenable position of having to continue monitoring a defendant's whereabouts after a bench warrant is issued for failure to appear or the violation of a bond condition. We decline to adopt such a rule.

[¶30.] There is no evidence that the State was dilatory after Langen failed to comply with his bond conditions. Minnehaha County obtained a bench warrant a week after Langen missed his first UA, and it presented the charges to a grand jury and obtained an indictment a month later. More importantly, neither Langen, nor his PD, notified Minnehaha County of his incarceration or that the Aurora County

charges had been resolved for nearly five months. There is also no reason to believe that Minnehaha County was aware of Langen's status until Sergeant Schaunaman asked the circuit court to cancel the bench warrant on October 29, 2018, "due to [Langen] being in custody in another jurisdiction."[6] Under these circumstances, good cause existed for the delay until the warrant was withdrawn.

[¶31.] Our primary consideration in assessing good cause is whether the delay is attributable to the State or the defendant. Further, we have made no distinction between the defendant personally and their attorney in determining whether a delay is attributable to the defendant under our speedy trial rule. *See Two Hearts*, 2019 S.D. 17, ¶ 16, 925 N.W.2d at 511 (holding the days from "August 7, 2015, and continuing throughout November 2015" during which defense counsel failed to respond to the State's requests to schedule a trial were properly excluded as delays attributable to the defendant under our speedy trial rule). The suggestion by the dissent that we should distinguish between Langen and his attorney in attributing the fault for the delay is inconsistent with our cases. Our inquiry in considering the 180-day speedy trial rule has always been on whether the delay is

---

6.  We distinguish the facts in this record from *State v. Goodroad*, in which we weighed the eight months while a defendant was incarcerated in the South Dakota State Penitentiary, from May 1992 to January 1993, "against the prosecution for delay or inaction." 521 N.W.2d 433, 439 (S.D. 1994). *Goodroad* involved a motion to dismiss Butte County charges for a violation of speedy trial rights under the Sixth Amendment, rather than SDCL 23A-44-5.1. *Id.* at 436-37. Further, the defendant in *Goodroad* was sentenced to the penitentiary on a Pennington County charge in June 1992, but it was not until "December 10, 1992, Butte County filed an arrest warrant with the penitentiary." *Id.* at 435. In contrast, Langen's warrant was outstanding before he was sentenced to the state penitentiary in July 2018.

attributable to the State or to the defense. *See Seaboy*, 2007 S.D. 24, ¶ 12, 729 N.W.2d at 373-74.

[¶32.]     The circuit court properly excluded the 102 days in which the Minnehaha County warrant was outstanding. We affirm Langen's convictions.

[¶33.]     SALTER, Justice, and GILBERTSON, Retired Chief Justice, concur.

[¶34.]     KERN and DEVANEY, Justices, dissent.

[¶35.]     MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.


KERN, Justice (dissenting).

[¶36.]     Although SDCL 23A-44-5.1 identifies certain periods of delay attributable to the defendant in calculating whether 180 days has elapsed, the excluded statutory periods do not encompass a delay caused by the State's mistaken belief that a defendant is wanted on a warrant when, in fact, the defendant is in state custody. In concluding otherwise, the majority opinion improperly places the onus on an incarcerated defendant to make it known to the State that he is in state custody and is thus present and available for prosecution. The majority opinion also erroneously excuses the State of its burden to bring the matter to trial in a timely manner. Therefore, I respectfully dissent.

*Absence or unavailability*

[¶37.]     Neither party nor the majority opinion cite authority directly on point for the conclusion that the period of delay caused by the State's mistaken belief that Langen was absent or unavailable should be attributable to Langen under SDCL

23A-44-5.1(4)(d). More importantly, the cases relied on by the majority opinion do not support that Langen had a duty to notify Minnehaha County, before or after his sentencing in Aurora County, of his status as an inmate in the State penitentiary.

[¶38.]     The majority opinion's reliance upon *Foster* is misplaced. The issue in *Foster* was not whether there was a violation of the 180-day rule or the defendant's right to be brought to trial. Rather, the issue was whether the defendant who failed to turn himself in to the sheriff to begin serving a sentence could properly be found guilty of the crime of failing to appear before a court or judicial officer under SDCL 23A-43-31. *Foster*, 372 N.W.2d at 469. Unlike the defendant in *Foster*, Langen was never released from custody, a significant distinction impacting the question here— whether he was absent or unavailable under SDCL 23A-44-5.1(4)(d).

[¶39.]     The majority opinion's reliance upon *Webb* is also unpersuasive. Although the case examined whether a period of delay should be attributed to the defendant due to his unavailability, the case did not concern an incarcerated defendant. Rather, the defendant was deemed unavailable because he failed to remain in contact with his attorney. In that circumstance, we concluded that "[t]he failure of a defendant to maintain contact with his attorney which necessitates the withdrawal of the attorney as counsel for defendant shortly before trial is plainly attributable to the defendant." *Webb*, 539 N.W.2d at 95.

[¶40.]     Here, in contrast, the circuit court did not find, nor could it find based on this record, that Langen failed to keep in contact with his attorney. Instead, the record includes Langen's unrefuted assertions that he attempted to make contact with his attorney on multiple occasions prior to sending his December 6, 2018

-15-

correspondence to the State's Attorney and Clerk of Courts. Without a factual finding supported by the record stating that Langen failed to maintain contact with his counsel, we cannot attribute the delay here to the defendant. For this reason, *Webb* is inapplicable to this case.

[¶41.]     In a more analogous case, this Court rejected the contention that the defendant—an inmate in the State penitentiary—was unavailable for prosecution, concluding that it was "obvious that [the defendant] was available for prosecution, being all of that time confined in the penitentiary[.]"[7] *State v. Starnes*, 86 S.D. 636, 639, 200 N.W.2d 244, 246 (1972). So too here, Langen was an inmate in the State's custody and was obviously available for prosecution for the purposes of SDCL 23A-44-5.1(4)(d). In fact, Langen's status as an inmate could have easily been tracked in the Odyssey system or through contact with Aurora County officials. Had that been done, Langen could have been brought before the Minnehaha County Circuit Court on a writ to address his pending charges. Thus, the circuit court erred, as a matter of law, in holding that Langen was absent or unavailable when he was at all times in the State's custody.

### *Good cause*

[¶42.]     The circuit court ruled, in the alternative, that there was good cause to exclude the period in which the Minnehaha County warrant was outstanding. Although periods of delay may be excluded for good cause under SDCL 23A-44-

---

7. *Starnes* predates SDCL 23A-44-5.1 and is factually distinguishable in that the county authorities did not claim ignorance of the fact that the defendant was incarcerated. As to the question of unavailability, the premise that a defendant in State custody is obviously available for prosecution remains sound.

5.1(4)(g) when there are exceptional circumstances not specifically enumerated in the rule, such was not the case here. In *Cooper*, we identified three "exceptional circumstances" that could constitute good cause for delay: "'unique, nonrecurring events'[;] or nonchronic court congestion[8][;] or unforeseen circumstances, 'such as the unexpected illness or unavailability of counsel or witnesses[.]'" 421 N.W.2d at 70 (citations omitted). The State bears the burden of establishing good cause. *Two Hearts*, 2019 S.D. 17, ¶ 11, 925 N.W.2d at 509.

[¶43.] At the August 14 hearing, the State told the circuit court that:

> [As] far as we knew, he was gone. And he wasn't available. The State didn't dillydally. The State went ahead, indicted the case in the normal course. And part of the problem here is that when defendants are indicted, if they are represented by counsel, we let the defense set the date that is most convenient to the defendants. And in this case the public defender's office didn't do that. The bench warrant—we didn't even realize that he was in custody and the warrant would be called back until . . . October 29.

None of the circumstances identified in *Cooper* are present here. The State's reliance upon an erroneously issued warrant and its routine practice of allowing defense counsel to schedule arraignments should not be deemed exceptional circumstances. The State was aware at the outset of Langen's case that he had a pending probation violation in Aurora County. Moreover, it was clear at his initial hearing that Langen was being turned over to the Aurora County authorities on their pending no bond warrant. Indeed, Minnehaha County facilitated his transfer to the Davison County jail at their request. This is not a unique or nonrecurring

---

8. "[E]xcept for short-term docket congestion caused by extraordinary circumstances, delay caused by docket congestion is attributable to the prosecution." *State v. Hoffman*, 409 N.W.2d 373, 375 (S.D. 1987).

event nor is it an unforeseen circumstance. Defendants frequently have charges pending simultaneously against them in more than one county or state.

[¶44.] For example, in *Goodroad*, the defendant alleged a violation of his Sixth Amendment right to a speedy trial as a result of a 27-month delay in the prosecution of a case filed against him in Butte County. 521 N.W.2d at 435, 437. After resolving a number of pending charges in several counties in Minnesota, the defendant waived extradition and returned to South Dakota to address charges in Pennington, Butte, and Meade Counties. *Id.* at 435-36. The defendant was transported first to Pennington County where he pled guilty to the charge against him and was sentenced and sent to the penitentiary. *Id.* at 436. An eight-month delay occurred before he was transported to Butte County for arraignment. *Id.* at 435. In rejecting Butte County's explanation (which was similar to the State's explanation here) that it was not notified by Pennington County that the defendant was transferred back to the penitentiary, we assessed this portion of the 27-month delay "against the prosecution for delay or inaction."[9] *Id.* at 439.

[¶45.] Central to the majority opinion's reasoning is the mischaracterization of Langen's failure to appear for 24/7 testing as a violation of the circuit court's order setting various conditions of release. The most reasonable interpretation of the full colloquy between Langen and the court regarding the 24/7 condition—"[i]f you get held and you go out to Aurora County, when you get *out* there, then you

---

9.      While it is true that *Goodroad* involved a violation of speedy trial rights under the Sixth Amendment, rather than SDCL 23A-44-5.1, the decision is nonetheless instructive because, like here, the County claimed good cause for the delay because it was unaware of the defendant's incarceration in the penitentiary.

need to make sure you talk to the 24/7 folks either there or here, and get it set up to do the UAs, okay"— is that it applied if and when he was released from custody. (emphasis added). Because Langen was never released from custody, he had no reason to contact the 24/7 program to arrange for twice weekly UAs. Despite the fact that the condition triggering this requirement never occurred, the Minnehaha County Sheriff's Office mistakenly filed a 24/7 violation report indicating that Langen was "released from jail" on June 13. The resulting warrant was later rescinded when the error was discovered. Although these events may have been inadvertent, they can hardly form the basis for a finding of *good cause* such that the resulting delay is attributed to a defendant who was at all times incarcerated.

[¶46.] Importantly, the circuit court made no factual finding that Langen or his counsel were the root cause of the delay. Rather, the court simply concluded that Langen was unavailable under the circumstances and, alternatively, that the State had good cause to rely upon an outstanding warrant. Langen's and his counsel's actions are analyzed separately only to show that neither may be held responsible for this delay, not to distinguish between the two as the majority opinion suggests. *See* Majority Opinion ¶ 31. With no delay attributable to the defense, there is no foundation upon which to base the circuit court's finding of good cause. Quite simply, the State had the burden to move the case along and failed to do so.

[¶47.] I further disagree with the majority opinion's contention that attributing the delay to the prosecution here would place the State "in the untenable position of having to continue monitoring a defendant's whereabouts

after a bench warrant is issued for failure to appear or the violation of a bond condition." *See* Majority Opinion ¶ 29. Such a view ignores the fact that the warrant was mistakenly issued on the faulty premise that Langen had been released from jail. It also ignores the fact that despite the State's awareness of Langen's pending felony probation violation in Aurora County, no effort was made to check on the status of that case. Instead, the State relied upon the custom in Minnehaha County to allow defense counsel to set court dates. But it is the State who has the burden to bring to trial "[e]very person indicted, informed or complained against for any offense[.]" SDCL 23A-44-5.1(1). Imposing the burden on the State to ascertain the whereabouts of a defendant in state custody hardly places the State in an untenable position.

[¶48.] Because the period of delay during which Minnehaha County officials erroneously believed Langen was out of custody with a warrant pending was improperly excluded, prejudice to Langen is presumed. The case must be dismissed unless the prosecution successfully rebuts this presumption. SDCL 23A-44-5.1(5). Although this is precisely the type of case in which the presumption might very well have been rebutted, the State made no effort to do so here.

[¶49.] At the August 7 hearing, Langen told the court that he was prejudiced by the delay in resolving his Minnehaha County case because he had qualified for work release from the penitentiary and wanted to begin working before he was released to start paying delinquent child support, fines, and costs. At a subsequent hearing, the court asked whether "the [S]tate ha[d] anything to present to rebut the [alleged] presumption of prejudice to the defendant?" The State replied in part, "*I*

*guess I don't have anything today. . . .* I suppose, on the one hand, it is sort of speculation as to whether or not he would get a job and whether or not he would get out, *but I don't have anything to say that he wouldn't.*" (emphasis added.) Despite the fact that Langen's asserted prejudice was not directly connected to the pending case, the State failed to present *any* argument or evidence to rebut the statutory presumption of prejudice. Therefore, the dictates of SDCL 23A-44-5.1 require the case to be dismissed with prejudice.

[¶50.] DEVANEY, Justice, joins this writing.